UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X

Moses Strauss et al.,

                              Plaintiffs,      CV-06-0702 (CPS)

        - against -                            MEMORANDUM OPINION
                                               AND ORDER

Crédit Lyonnais, S.A.,

                              Defendant.

---------------------------------------X

SIFTON, Senior Judge.

    Plaintiffs, United States citizens and the estates,

survivors and heirs of deceased United States citizens, who have

been or were victims of terrorist attacks in Israel, bring this

action against defendant, Crédit Lyonnais, S.A.("Crédit

Lyonnais") alleging that defendant is civilly liable to the

plaintiffs for damages, pursuant to 18 U.S.C. § 2333(a),[1] because

it (1) aided and abetted the murder, attempted murder, and

serious bodily injury of American nationals located outside the

United States in violation of 18 U.S.C. § 2332; (2) knowingly

provided material support or resources to a foreign terrorist

---

[1] The statute reads, in relevant part:

    Any national of the United States injured in his or her person,
    property, or business by reason of an act of international
    terrorism or his or her estate, survivors, or heirs, may sue
    therefor in any appropriate district court of the United States
    and shall recover threefold the damages he or she sustains and the
    cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).

organization ("FTO")[2] in violation of 18 U.S.C. § 2339B[3]; and (3) unlawfully and willfully provided or collected funds with the intention that such funds would be used, or with the knowledge that such funds would be used for terrorist purposes in violation of 18 U.S.C. § 2339C.[4] Now before this Court is defendant's motion to dismiss plaintiffs' claims based on the Eleventh,

---

[2] Pursuant to Section 209 of the Immigration and Nationality Act, 8 U.S.C. §1189, the Secretary of State, in consultation with the Secretary of Treasury and the Attorney General may designate an organization as a foreign terrorist organization if:

(a) the organization is a foreign organization;

(b) the organization engages in terrorist activity or terrorism, or retains the capability and intent to engage in terrorist activity or terrorism; and

(c) the terrorist activity or terrorism of the organization threatens the security of United States nationals or the national security of the United States.

[3] The statute reads, in relevant part:

Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, [is guilty of a crime]. . . To violate this paragraph a person must have knowledge that the organization is a designated terrorist organization . . . has engaged in terrorist activity . . . . or that the organization has engaged in or engages in terrorism.

18 U.S.C. § 2339B.

[4] The statute reads, in relevant part:

Whoever . . . by any means, directly or indirectly, unlawfully and willfully provides or collects funds with the intention that such funds be used, or with the knowledge that such funds are to be used in full or in part, in order to carry out . . . [an] act intended to cause death or serious bodily injury to a civilian, or to any other person not taking an active part in the hostilities in a situation of armed conflict, when the purpose of such act, by its nature or context, is to intimidate a population or to compel a government or an international organization to do or to abstain from doing any act, shall be punished as prescribed in subsection (d)(1).

18 U.S.C. § 2339C.

Twelfth and Thirteenth Attacks alleged in the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that these claims are time-barred.  For the reasons set forth below, defendant's motion to dismiss claims based on the Eleventh, Twelfth and Thirteenth Attacks is granted.

## Factual Background

Familiarity with the underlying facts of this case is presumed.  They are discussed at length in this Court's prior decision in this action, *Strauss v. Crédit Lyonnais, S.A.,* 2006 WL 2862704 (E.D.N.Y. 2006).  Only those facts relevant to the present motion are referred to herein.  They are drawn from the Amended Complaint and are presumed to be true for the purposes of this motion, as required by applicable case law. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002).

*The Terrorist Attacks*

In the Amended Complaint, plaintiffs identify thirteen separate attacks between 2001 and 2003 which caused their injuries.  Of relevance to the present motion are three attacks which occurred in 2001.

> 1.  [On] December 1, 2001 Nabil Halabiya and Osama Mohammad Id Bahr, two HAMAS suicide bombers, blew themselves up in a pedestrian mall in Jerusalem as part of a coordinated double suicide bombing . . . . Eleven (11)

people were murdered and over one hundred (100) people were injured. Bahr had been recruited by Jamal al-Tawil, the chairman of the Al-Islah Charitable Society since 2000. The Al-Islah Charitable Society is one of HAMAS's key charitable front organizations in the West Bank. Amend. Compl., ¶ 308 (the "Eleventh Attack").

2. On August 9, 2001, a HAMAS suicide bomber detonated a bomb packed with nails and metal bolts at the Sbarro's Pizzeria in Jerusalem. Fifteen (15) people were killed in this attack . . . and approximately one hundred and thirty (130) people were injured. The suicide bomber was identified as Izz Ad-Din Shahail Ahmad Al-Masri. Amend. Compl., ¶¶ 360-362 (the "Twelfth Attack").

3. On March 28, 2001, Fadi Attallah Yusuf Amer, a HAMAS suicide bomber, blew himself up outside a gas station near Kfar Sava, killing tow teenagers waiting for a bus . . . . Four (4) other people were injured. Amend. Compl., ¶ 439 (the "Thirteenth Attack").

*Comité de Bienfaisance et de Secours aux Palestinians a/k/a*

*Comité Bienfaisance pour la Solidarité avec la Palestiene*

*("CBSP")*

CBSP is a non-profit corporation organized in 1990 with its headquarters in France. According to plaintiffs, CBSP is part of HAMAS's fund-raising infrastructure. In 1997 the Government of Israel declared CBSP an "unlawful organization" because of its affiliation with HAMAS and the support it provided to HAMAS front organizations. Between 2001 and 2003, French authorities also investigated CBSP's alleged terrorist connections. In August

2003, President George W. Bush identified CBSP as a HAMAS fund-raising entity and placed it on the Office of Foreign Assets Control ("OFAC") list as a Specially Designated Global Terrorist ("SDGT") organization.

*CBSP's Accounts at Crédit Lyonnais*

CBSP opened accounts at Crédit Lyonnais in 1990. In 2000 the defendant began to notice unusual transfers of funds as described below occurring in CBSP's main accounts.  Crédit Lyonnais did not, however, close CBSP's accounts or freeze any funds at that time.  In 2002 Crédit Lyonnais began the process of closing CBSP's accounts. In September 2003 Crédit Lyonnais completed the process of closing CBSP's accounts at the bank.

The plaintiffs allege that between 2000 and 2003 Crédit Lyonnais knowingly transferred funds from CBSP to institutions within HAMAS's financial division, including the Orphan Care Society, Al-Islah, the Ramallah Al-Bireh Charitable Society, the Jenin Charity Committee, the Hebron Islamic Association, the Tulkarem Charity Committee, Al-Mujama al-Islami, the Islamic Charitable Society in the Gaza Strip, Al-Salah Society and the Muslim Youth Association of Hebron (collectively, "HAMAS controlled organizations").

## Procedural Background

On October 5, 2006, this Court dismissed the claims arising from the Eleventh, Twelfth and Thirteenth Attacks as barred by the statute of limitations, since those attacks occurred, respectively, on December 1, 2001, August 9, 2001, and March 28, 2001 and the Original Complaint was filed on February 16, 2006, after the expiration of the four year limitations period set forth in 18 U.S.C. § 2335(a). However, plaintiffs were granted leave to amend their Complaint. *See Strauss,* 2006 WL 2862704, at *1.

On November 6, 2006, plaintiffs filed an Amended Complaint which is substantively the same as the Original Complaint with the exception of several new paragraphs discussing "Plaintiffs' Knowledge Concerning Defendant's Conduct." These paragraphs state that plaintiffs do not speak or read French or Arabic fluently; that plaintiffs were unaware of the fact that CBSP had a financial relationship with the defendant or that defendant provided material support to HAMAS, nor could such information have been obtained through the exercise of reasonable diligence; that defendant never publicly disclosed that CBSP was its customer or disclosed the nature of the financial services provided to CBSP or the beneficiaries of wire transfers it sent to third parties on behalf of CBSP, preventing plaintiffs from discovering the relationship between defendant and CBSP; that

plaintiffs do not possess any expert or technical knowledge concerning the means by which HAMAS, CBSP and other entities receive or transfer funds from persons or entities in Europe to HAMAS and had no access to non-public information as to defendant's relationship with such entities; that plaintiffs could not, through due diligence, have been aware of any suspicious activity reports generated with respect to CBSP due to the confidentiality of such reports, and that plaintiffs did not have access to international banking or wire transfer records or French police or intelligence reports concerning CBSP, HAMAS or banks which provided services to those entities. Amend. Compl., ¶¶ 537-541.  According to plaintiffs' Amended Complaint, "plaintiffs could not have discovered, through the exercise of reasonable diligence, that Crédit Lyonnaise provided financial services to either CBSP or HAMAS at any time before the second quarter of 2005, when non-public information regarding defendant's relationship with CBSP first became available to plaintiffs." *Id*. at ¶ 542.

## Discussion

Defendant again moves to dismiss claims based on the Eleventh, Twelfth and Thirteenth Attacks on the grounds that they are barred by the four year statute of limitations in 18 U.S.C. §

2335(a).[5] Plaintiffs argue that the claims are subject to the tolling provisions of 18 U.S.C. § 2335(b) as well as the diligence-discovery rule of accrual and equitable tolling.

I. Section 2335 Tolling

18 U.S.C. § 2335(b) provides for tolling of the four year statute of limitations for actions brought under 18 U.S.C. § 2333. Section 2335(b) reads:

> The time of the absence of the defendant from the United States or from any jurisdiction in which the same or a similar action arising from the same facts may be maintained by the plaintiff, or of any concealment of the defendant's whereabouts, shall not be included in the 4-year period set forth in subsection (a).

According to plaintiffs, since the nature of Crédit Lyonnais's association with CBSP was "inherently self-concealing" due to the provisions of French banking law which prohibited Crédit Lyonnais from revealing confidential customer information or the fact that CBSP was a customer, this tolling statute should

---

[5] 18 U.S.C. § 2335(b) provides that, for actions brought under § 2333(a),

> The time of the absence of the defendant from the United States or from any jurisdiction in which the same or similar action arising from the same facts may be maintained by the plaintiff, or of any concealment of the defendant's whereabouts, shall not be included in the 4-year period set forth in subsection (a).

Plaintiffs, in their brief, concede that this "concealment" provision is not applicable here.

apply.[6] Plaintiffs' Memorandum of Law, p.1 n.2.  As I noted in my previous Opinion in this action, "[r]esearch by the parties and by this Court has produced no decision interpreting this 'concealment' provision." *Strauss,* 2006 WL 2862704, at *8.[7]

*"Whereabouts"*

Under the plain language of the statute, the limitations period is tolled for 'concealment' only when a defendant conceals his "whereabouts," which means "[t]he general locale where a person or thing is." BLACK'S LAW DICTIONARY 1626, (8th ed. 2004) ("BLACK'S").  That definition is consistent with the first half of § 2335(b), which tolls the limitations period when a defendant is physically absent from a jurisdiction in which the action can be brought.  Accordingly, under a plain reading of the statute, the tolling period in § 2335(b) was designed to remedy problems

---

[6] The relevant secrecy law is Article L 511-33 of the French Monetary and Financial Code, which reads:

> Any member of a Board of Directors and, if applicable, of a Supervisory Board, and any person who, in whatever capacity, participates in the management or administration of a credit institution or is employed by one, is bound by professional secrecy, under the terms and subject to the penalties provided for in Article L. 571-4.

*See* http://195.83.177.9/code/liste.phtml?lang=uk&c=25&r=920/

[7] In that Opinion, I found that "the parameters of section 2335(b)'s concealment doctrine need not be determined here because the complaint makes no allegation that defendant concealed its identity as CBSP's bank or its transfer of funds for CBSP to various HAMAS controlled organizations." *Strauss,* 2006 WL 2862704, at *8.  Plaintiffs now allege Crédit Lyonnais's connection to the CBSP was "self-concealing" due to the nature of French law.

related to a court's ability to assert jurisdiction over a defendant.[8]

However, plaintiffs cite legislative history of this provision which indicates that a defendant's concealment of "whereabouts" encompasses concealment of his identity and acts. Specifically, plaintiffs cite the Senate Report on the Anti-Terrorism Act of 1992 ("ATA"),[9] which states that: "This section provides for a 4-year statute of limitations, but in recognition of the peculiar characteristics of terrorism, it tolls the statute of limitation during any periods when the terrorists have concealed their *acts or identities* or remain outside of the United States."[10] S.Rep. 102-342 (Report on P.L. 102-572, Federal Courts Administration Act of 1992, July 27, 1992) (emphasis added).

"The starting point for [the] interpretation of a statute is always its language," *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) and, as the Supreme Court has "stated time and again . . . courts must presume that a

_____

[8] Plaintiffs make no claim that Crédit Lyonnais ever concealed its location or otherwise put itself outside of the jurisdiction of the courts of this or any other country.

[9] Sections 2333 and 2335 were enacted pursuant to the ATA, signed into law on October 29, 1992.

[10] There is no other legislative history referring to this provision. An earlier version of § 2335, with the identical text, was signed into law in 1990 and then repealed in 1991, apparently due to the fact that it was included in the 1990 act by mistake. *See* Pub.L. 101-519, §132(b)(4). There is no legislative history discussing the issue of "concealment" in the 1990 version.

legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain.* 503 U.S. 249, 253 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* (quoting *Rubin v. U.S.*, 449 U.S. 424, 430 (1981); *see also Exxon Mobil Corp. v. Allapattah Services*, *Inc.,* 545 U.S. 546, 568 (2005) ("As we have repeatedly held, the authoritative statement is the statutory text, not the legislative history or any other extrinsic material. Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.");[11] *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1073 (2d Cir. 1993) ("If the words of a statute are unambiguous, judicial inquiry should end, and the law interpreted according to the plain meaning of its words."); *but see U.S. v. Skinner,* 946 F.2d 176, 178 (2d Cir. 1991) ("Where . . . the statutory language is unambiguous, absent

---

[11] The Court in *Allapattah Services* noted that one of the problems with relying on legislative history is that

> judicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members - or, worse yet, unelected staffers and lobbyists - both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text.

545 U.S. 546 at 568.

legislative history that contradicts that language, we will not adopt a different construction of the statute.").

In the present situation, the statutory language is clear and precise and unambiguous. Without the single Senate Report cited by plaintiffs, there would no reason whatsoever to doubt that "whereabouts" refers the location of defendants who were concealing their whereabouts so as to avoid the exercise of jurisdiction by courts. Nor is this one of those "rare and exceptional circumstances . . . when a contrary legislative intent is clearly expressed." *Ardestani v. I.N.S.*, 502 U.S. 129, 136 (1991) (internal citations and quotations omitted); *see also Watt v. Alaska,* 451 U.S. 259, 266 (1981) ("[T]he plain-meaning rule is . . . an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists. . . . The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect.") (internal citations and quotations omitted). Granting plaintiff's argument that the ATA was developed in order to make it easier for U.S. citizens to effectively prosecute civil lawsuits against terrorists, Congress's having limited its tolling rule to only those cases in which a defendant's presence in an appropriate jurisdiction could not be ascertained does not contradict that purpose. Indeed, as cited by plaintiffs, in introducing the original version of the

ATA, Senator Charles E. Grassley stated that "[u]nfortunately,
victims who turn to the common law of tort or Federal statutes,
find it virtually impossible to pursue their claims because of
reluctant courts and *numerous jurisdictional hurdles*." 136 Cong.
Rec. 7592 (1990) (emphasis added).  Since the plain meaning of
the statute resolves "jurisdictional hurdles," such a reading is
consistent with the overall legislative intent of the ATA and
there is no "reason to believe that strict adherence to the
language of the Act would subvert its purpose." *U.S. v. Payden*,
759 F.2d 202, 204 (2d Cir. 1985).  Accordingly, since plaintiffs
make no allegation that Crédit Lyonnais concealed its
whereabouts, the tolling provision of § 2335(b) is unavailable.


*"Concealment"*

Assuming, *arguendo*, that the statute tolls the limitations
period for those who conceal their acts or identities, and not
just their location, § 2335(b) is only available if there was
"concealment," which plaintiffs have not alleged.

According to plaintiffs, information which cannot be
discovered due to the impact of French law is properly considered
'concealed' under the tolling statute.  Black's Law Dictionary
defines concealment as:

> 1. The act of refraining from disclosure; esp., an act
> by which one prevents or hinders the discovery of
> something; a cover-up. 2. The act of removing from
> sight or notice; hiding. 3. Insurance. The insured's

> intentional withholding from the insurer material facts
> that increase the insurer's risk and that in good faith
> ought to be disclosed . . . .
>
> "Concealment is an affirmative act intended or known to
> be likely to keep another from learning of a fact of
> which he would otherwise have learned.  Such
> affirmative action is always equivalent to a
> misrepresentation and has any effect that a
> misrepresentation would have . . . ." Restatement
> (Second) of Contracts § 160 cmt. a (1979).
>
> *active concealment*. The concealment by words or acts of
> something that one has a duty to reveal . . . .
>
> *fraudulent concealment*. The affirmative suppression or
> hiding, with the intent to deceive or defraud, of a
> material fact or circumstance that one is legally (or,
> sometimes, morally) bound to reveal . . . .
>
> *passive concealment*. The act of maintaining silence
> when one has a duty to speak . . . .

BLACK'S at 306-07; *see also Caputo v. Pfizer, Inc.,* 267 F.3d 181,

190 (2d Cir. 2001) (Distinguishing "fraud" from "concealment" and

defining concealment to mean "engaged in acts to hinder . . .

discovery."); *In re Shoesmith*, 135 F. 684, 687 (7th Cir. 1905)

(Concealment in bankruptcy law "implies an act done or procured

to be done, which is intended to prevent or hinder.  It covers

something more, however, than a mere failure to disclose.")

(Cited in *Continental Bank & Trust Co. of New York v. Winter,* 153

F.2d 397, 399 (2d Cir. 1946)).

In each of these definitions, concealment is an act by one

party which prevents another from discovering something, by

affirmatively hiding information or by failing to disclose

information which one had some obligation to reveal.[12]

"Concealment" does not refer to a situation in which something simply could not be discovered due to circumstances.  In the present case, there is alleged no affirmative act performed to prevent plaintiffs from discovering that CBSP was a client of Crédit Lyonnais, nor is it alleged that Crédit Lyonnais was under an obligation to disclose such information and chose not to.[13] What is alleged is simply that Crédit Lyonnais kept its client information a secret in accordance with French law.

A review of case law dealing with the term "self-concealing," which is used by plaintiffs, reveals that the term is used in reference to fraud where "the defendant . . . engaged in some misleading, deceptive or otherwise contrived action or scheme, in the course of committing the wrong, that was designed to mask the cause of action." *S.E.C. v. Jones,* 476 F.Supp.2d 374, 382 (S.D.N.Y. 2007) (internal quotations omitted).[14]  For

---

[12] Even the first definition, "refraining from disclosure" suggests that the one who concealed information had some obligation to disclose and decided not to do so.

[13] In fact, plaintiffs stated at oral argument that "we're not arguing that [defendant] had any obligation to [disclose the identity of their customers." Transcript of Record at 4, *Strauss, et al v. Crédit Lyonnais*, No. 06-CV-0702 (June 7, 2007).

[14] This term is used in connection with the common law "concealment rule" for fraud which states that

> when there has been no negligence or laches on the part of a plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by, or becomes known to, the party suing, or those in privity with him.

example, "passing off of a sham article as one that is genuine is

an inherently self-concealing fraud, whether what is passed off

is a fake vase sold as a real antique . . . or a collusive bid

purporting to reflect genuine competition." *State of N.Y. v.*

*Hendrickson Bros., Inc.,* 840 F.2d 1065, 1083 (2d Cir. 1988)

(internal citations omitted); *see also* BLACK'S at 307

("concealment rule" applies where "defendant's conduct . . .

hinders or prevents a plaintiff from discovering the existence of

a claim."). Again, this application of the term 'concealment'

requires some affirmative act of hiding or deception by

defendants.[15] Since none has been alleged, the tolling provision

of § 2335(b) does not apply.

---

*Bailey v. Glover*, 88 U.S. 342, 349-50 (1874).

[15] I also note that most circuits which have interpreted the term "conceals" in the misprision of felony statute to require an affirmative act of concealment. *See* 18 U.S.C. § 4 ("Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge . . ."); *U.S. v. Sampol*, 636 F.2d 621, 653 (D.C. Cir. 1980); *U.S. v. Wilkes,* 1992 WL 188133, at *2 (4th Cir. 1992); *U.S. v. Hall,* 1995 WL 449627, at *10 (5th Cir. 1995); *Burman v. I.N.S.,* 1994 WL 378354, at *3 (6th Cir. 1994); *U.S. v. Daddano*, 432 F.2d 1119, 1124 (7th Cir. 1970); *U.S. v. Bolden*, 368 F.3d 1032, 1037 (8th Cir. 2004); *U.S. v. Rivera,* 1994 WL 497317, at *2 (9th Cir. 1994); *U.S. v. Gould,* 1996 WL 108497, at *1 (10th Cir. 1996); *Itani v. Ashcroft,* 298 F.3d 1213, 1216 (11th Cir. 2002). In *U.S. v. Caraballo-Rodriguez,* 480 F.3d 62 (1st Cir. 2007), the First Circuit suggested, without deciding, that the statute may not require an affirmative act. However, even in that case, it is clear that the court believed the statute created a disclosure obligation, which plaintiffs have not alleged here.

II. Diligence-Discovery Rule & Equitable Tolling

To evaluate plaintiffs' arguments regarding the diligence-discovery rule of accrual and equitable tolling, it is first appropriate to distinguish between the doctrines, concepts which often overlap in case law. *See Heins v. Potter*, 271 F.Supp.2d 545, 552 (S.D.N.Y. 2003) (noting that statute of limitations law is "less than straightforward").

Normally, a cause of action accrues on the date a party is injured. *See Heins v. Potter,* 271 F.Supp.2d 545, 552 (S.D.N.Y. 2003) (citing *Cada v. Baxter Healthcare Corp*., 920 F.2d 446, 450 (7th Cir. 1990)). The so-called 'diligence-discovery rule' cited by plaintiffs acts to delay the date of accrual "where a plaintiff demonstrates that his injury was inherently unknowable at the time he was injured." *Barret v. U.S.*, 689 F.2d 324, 327 (2d Cir. 1982); *see also Guccione v. U.S.,* 670 F.Supp. 527, 536 (S.D.N.Y. 1987).[16]

In contrast, the doctrine of equitable tolling applies after the claim has already accrued, "suspending the statute of limitations to prevent unfairness to a diligent plaintiff." *Haekal v. Refco, Inc.,* 198 F.3d 37, 43 (2d Cir. 1999) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990))

---

[16] "This special rule of accrual may also be applied where it has been shown that the plaintiff was blamelessly ignorant of his claim due to the [defendant's] deliberate concealment of its facts." *Guccione*, 670 F.Supp. at 536. Plaintiffs have not alleged any deliberate concealment.

(internal quotation marks omitted); *see also Potter,* 271
F.Supp.2d at 552-54 ("[W]here a defendant's wrongful, affirmative
conduct prevents a plaintiff from learning that he has been
injured, the plaintiff's cause of action has not accrued . . . .
However, when a plaintiff knows or should have known of his
injury - i.e., his claim has accrued - but the defendant's
wrongful, affirmative acts prevent him from learning about other
facts that might support a cause of action, then tolling may
apply.") (internal citations omitted).  With this distinction in
mind, I evaluate the claims alleged to have arisen from the
Eleventh, Twelfth and Thirteenth Attacks.


*Diligence-Discovery Rule*

     As noted, the diligence-discovery rule delays the date of
accrual for a cause of action "where a plaintiff demonstrates
that his injury was inherently unknowable at the time he was
injured." *Barret*, 689 F.2d at 327.  To take advantage of this
rule, a plaintiff must show that diligence would not have
disclosed the relevant facts. *Guccione*, 670 F.Supp. at 536
("Whether a plaintiff 'should have known' these critical facts,
even if he did not actually know them, is decided by reference to
whether a reasonable person exercising due and reasonable
diligence would have discovered such facts.").

The Second Circuit has made clear that when evaluating the date of accrual under the diligence-discovery rule, the cause of action accrues when a plaintiff is sufficiently aware of the facts so as to have knowledge regarding the existence of a legal claim.  In *Kronisch v. U.S.,* 150 F.3d 112, 121 (2d Cir. 1998), the Second Circuit stated that the 'diligence-discovery rule' applies "where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted." *Kronisch v. U.S.,* 150 F.3d 112, 121 (2d Cir. 1998). The court in *Kronisch* went on to note that "[d]iscovery of the 'critical facts' of injury and causation is not an exacting requirement . . . [requiring knowledge only of] the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it." *Id*. (internal citations and quotations omitted).  Further, the court noted that the "plaintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim.  Rather, a claim will accrue when the plaintiff knows, or should know, enough of the critical facts of injury and causation to protect himself by seeking legal advice." *Id*. (internal citations and quotations omitted).  Accordingly, under *Kronisch*, the essential question determining the time of accrual is at what point a plaintiff is sufficiently aware of

enough critical facts which would lead a reasonable person to seek the advice of an attorney in evaluating the next steps.

Other circuits have held that the diligence-discovery rule does not apply so long as the plaintiff is aware of the injury and its *immediate* cause, so that plaintiff is put on notice to the fact that his legal rights have been invaded. *See Zeleznik v. U.S.,* 770 F.2d 20, 23 (3d Cir. 1985) (Where plaintiffs were aware of injury and immediate cause, plaintiffs' claims were time barred even though they could not, through reasonable diligence, have discovered that the government was responsible for the injury since, although the limitations period does not begin to run "until [the injured party] learns of his injury," once a plaintiff is aware of his injury and its *immediate* cause, the statute of limitations begins to run, even if [plaintiff] is not aware of others who were involved in causing the injury . . . . An injured party with the knowledge of injury and its immediate cause is in no worse position than any other plaintiff who must determine whom to sue in a obscure factual context."); *Dyniewicz v. U.S.*, 742 F.2d 484, 486 (9th Cir. 1984) ("Discovery of the cause of one's injury, however, does not mean knowing who is responsible for it. The 'cause' is known when the immediate physical cause of the injury is discovered."); *Richman v. U.S.*, 709 F.2d 122, 123-24 (1st Cir. 1983) ("[I]f a pedestrian were struck by a negligent driver, the statute would run in favor of

his undisclosed employer, and the barkeeper who allowed him to drink too much, even if the pedestrian were ignorant of their existence. There would be no limit to when the government might be sued if a plaintiff could assert ignorance as an excuse for not pursuing her claim within the statutory period.").[17]

In this case, plaintiffs clearly had access to information which did or should have made them aware of the existence of a cause of action and should have led them to seek counsel shortly after the attacks, namely the facts of their injuries and the role of HAMAS as the organization responsible for such injuries.[18] Thus, the fact that they were not aware of all possible defendants is not determinative of plaintiffs' awareness of their potential cause of action and does not delay the date of

---

[17] As plaintiffs rightly note, the claims in these cases and in *Kronisch* were made under the Federal Tort Claims Act ("FTCA"), and the "Supreme Court has admonished that the courts should carefully construe the statute of limitations for the FTCA so as not to extend the limited waiver of sovereign immunity beyond that which Congress intended." *Zeleznik*, 770 F.2d at 22. However, the rules elucidated in these cases does not appear to be based on any considerations which are peculiar to FTCA claims, nor is there any other reason to believe that the rule of accrual would differ in that context. Moreover, several courts in this circuit, when dealing with private suits, have cited the *Kronisch* standard. *See Potter*, 271 F.Supp.2d at 555; *Pelman ex rel. Pelman v. McDonald's Corp.*, 2003 WL 22052778, at *6 (S.D.N.Y. 2003) (overturned on other grounds); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F.Supp.2d 233, 244 (S.D.N.Y. 2002).

[18] As I noted in my previous opinion, evidence was also available as early as 1997 as to CBSP's funding of HAMAS, when the Israeli government designated the first of these groups as a terrorist organization on the basis of its financial support for HAMAS. To the extent that plaintiffs attempt to distinguish this case on the grounds that plaintiffs in other cases had "a circle . . . [to] look to for a potential defendant," plaintiffs could have looked to HAMAS as a defendant. Transcript of Record at 8. The fact that other actions against HAMAS have resulted in default judgment and non-payment does not mean that plaintiff had no one to bring the action against, just that the particular defendant was, for all intents and purposes, judgment-proof.

accrual, even if identification of other defendants was not immediately knowable.[19]  Accordingly, the claims relating to the Eleventh, Twelfth and Thirteenth Attacks are not subject to tolling under the diligence-discovery rule of accrual.

*Equitable Tolling/Equitable Estoppel*

Equitable tolling is available only in "extraordinary" circumstances." *Pearl v. City of Long Beach,* 296 F.3d 76, 85 (2d Cir. 2002) (quoting *Miller v. International Telephone & Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985) (internal quotation marks omitted); *see also Chapman v. ChoiceCare Long Island Term Disability Plan,* 288 F.3d 506, 512 (2d Cir. 2002) ("[T]he burden of proving that tolling is appropriate rests on the plaintiff."). "Courts may evaluate whether it would be proper to apply [equitable tolling] doctrines, although they are to be applied sparingly," *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113-114 (2002), and "[p]rocedural requirements established by Congress for gaining access to  the federal courts are not to

---

[19] Plaintiffs cite the decision in *Liuzzo v. U.S.*, 485 F. Supp 1274 (E.D.Mich 1980), in which the children of a civil rights worker murdered by the Ku Klux Klan were allowed to bring suit against the government after the FBI's role in her murder was disclosed even though the statute of limitations has expired, on the grounds that the plaintiffs were unable to discover who had caused them their injury.  As noted by the Second Circuit in *Barret*, an essential element in that case was the government's concealment of the FBI's involvement, accomplished by President Johnson's speech on national television confirming that all of the Ku Klux Klan members involved had been arrested due to the diligence of the FBI agents. 689 F.2d at 330 ("[In *Liuzzo*,] as here, misrepresentations and concealed information had justifiably led the plaintiffs to believe that those responsible for their parent's death had been punished.").

be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984).

Two different tolling doctrines are discussed in the case law, equitable tolling and equitable estoppel. In the Seventh Circuit, "the difference between equitable tolling and equitable estoppel . . . is the defendant's wrongful conduct" - equitable estoppel applies where the defendant actively prevented the plaintiff from pleading in time, while equitable tolling applies where the plaintiff, exercising due diligence, is unable to obtain the information necessary for his claim through no fault of the defendant." *Potter,* 271 F.Supp.2d at 552 (citing *Cada,* 920 F.2d at 449-451). However, in the Second Circuit, case law requires some affirmative misconduct by a defendant to invoke either doctrine. In *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985), the Court of Appeals explained: "Unlike equitable tolling, which is invoked in cases where the plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment, equitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit." *See also Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation, P.C.,* 475 F.Supp.2d 213, 232 (E.D.N.Y. 2007) ("Plaintiffs urge this Court

to adopt the Seventh Circuit's standard for equitable tolling,
which does not require an effort by the defendant to prevent the
plaintiff from suing . . . . In the Second Circuit, however,
equitable tolling requires that a plaintiff establish both that
there was 'fraudulent concealment' of the violation and the
plaintiff exercised 'due diligence' to discover the claim.")
(internal citations and quotations omitted); *Shapiro v. William
Douglas McAdams, Inc.*, 1995 WL 313120, at *4 (E.D.N.Y. 1995)
(Declining to adopt the reasoning of other circuits and "reject
the Second Circuit holding that equitable tolling requires the
employer's affirmative conduct."); *Angotti v. Kenyon & Kenyon,*
929 F.Supp. 651, 656 (S.D.N.Y. 1996) ("[J]ust as equitable
estoppel is triggered by the defendant's conduct, in this
Circuit, the doctrine of equitable tolling is similarly
limited."); *Potter,* 271 F.Supp.2d at 554-55 (noting that the
distinction between the tolling doctrines in the Second Circuit
is that equitable tolling applies when plaintiff "is unaware of
facts supporting a cause of action," while equitable estoppel
applies "only when a plaintiff is aware of his cause of
action.").[20]

---

[20] In *Veltri v. Building Serv. 32 B-J Pension Fund*, 393 F.3d 318, 323
(2d Cir. 2004), the Second Circuit, citing *Cada*, noted that "[t]he relevant
question is not the intention underlying defendants' conduct, but rather
whether a reasonable plaintiff in the circumstances would have been aware of
the existence of a cause of action."  However, the court's decision in that
case related to a situation where the defendant concealed from the plaintiff
information relating to his cause of action, and cited to *Cerbone*,.
    Plaintiffs cite to *Jerry Kubecka, Inc. v. Avellino,* 898 F.Supp. 963, 971

In the present case, plaintiffs have alleged no conduct on
the part of Crédit Lyonnais which prevented plaintiff from
discovering Crédit Lyonnais's relationship with CBSP during the
limitations period.  Indeed, as discussed above, plaintiffs
themselves concede that defendant did not fraudulently conceal
its activities, alleging only that the activities were
"inherently self-concealing."  Since the Second Circuit requires
some affirmative act by defendants to invoke either tolling
doctrine and plaintiffs have alleged no such act, I conclude that
plaintiffs have failed to plead facts which demonstrate that
equitable tolling or equitable estoppel should apply to the
Eleventh, Twelfth and Thirteenth Attacks.[21]

_____

(E.D.N.Y. 1995), in which the district court noted that tolling depends on
"the inability of the plaintiffs to discover the essential facts."  However,
that case is distinct from the present one since the Complaint alleged that
the defendants, members of an organized crime family, used "fraudulent and
violent means to conceal their involvement" in the activities which gave rise
to the Complaint. *Id.* at 967.  Such active concealment is not alleged here.
Moreover, the court in *Avellino* specifically cites *Cada* as legal precedent
and, as discussed above, the Seventh Circuit's view of equitable estoppel
differs from the Second Circuit's, which is controlling precedent in this
court.  No research reveals case law in which the statute of limitations has
been tolled for a blameless defendant.

[21] The result that plaintiffs are thus barred from pursuing their claims
is consistent with the purpose of limitations periods, which "protect
defendants . . . from incurring liability on stale claims because of lost
evidence, . . . [and] also from bearing the burden of defending against stale
claims regardless of whether liability is eventually established." *Steele v.
U.S.*, 599 F.2d 823, 829 (7th Cir. 1979); *see also Mohasco Corp. v. Silver*, 447
U.S. 807, 826 (1980) ("[I]n the long run, experience teaches that strict
adherence to the procedural requirements specified by the legislature is the
best guarantee of evenhanded administration of the law.").
    Defendant has also argued that common law tolling doctrines are not
available where the statutory text, such as § 2335(b), explicitly provides the
circumstances under which a limitations period may be tolled. *See U.S. v.
Beggerly,* 524 U.S. 38, 48 (1998) ("Equitable tolling is not permissible where
it is inconsistent with the text of the relevant statute" and a statute that
provides "that the statute of limitations will not begin to run until the
plaintiff 'knew or should have known of the claim . . .' has already

## Conclusion

For the reasons set forth above, defendant's motion to dismiss claims in the Amended Complaint based on the Eleventh, Twelfth and Thirteenth Attacks is granted.  The clerk is directed to transmit a copy of the within to all parties.


SO ORDERED.

Dated:     Brooklyn, New York
           August 6, 2007


                    By: /s/ Charles P. Sifton (electronically signed)
                                United States District Judge

---

effectively allowed for equitable tolling."); *but see Chung v. U.S. Dept. of Justice*, 333 F.3d 273, 277 (D.C.Cir. 2003) ("That there is an express provision in the statute for tolling is, to be sure, a factor that weighs against tolling for any reason not specified in the statute . . . But neither the Supreme Court nor any other court has deemed that negative implication alone sufficient."); *Hedges v. U.S.*, 404 F.3d 744 (3rd Cir. 2005). However, since I find that the common law tolling doctrines do not apply to the facts of this case even if they are available, I need not determine whether the statutory text of § 2335(b) limits their availability.  I also need not determine whether plaintiffs have sufficiently set forth facts in the Complaint demonstrating that they could not, through the exercise of reasonable diligence, have discovered that Crédit Lyonnais served as CBSP's bank.