UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------x
MOSES STRAUSS, et al.,

                   Plaintiffs,

   -against-

CREDIT LYONNAIS, S.A.,

                  Defendant.

----------------------------------x

BERNICE WOLF, et al.,

                   Plaintiffs,

   -against-

CREDIT LYONNAIS, S.A.,

                  Defendant.

----------------------------------x

Memorandum and Order
regarding
Modification of
<u>Protective Order</u>

06-CV-702 (DLI)(MDG)

07-CV-914 (DLI)(MDG)

     Plaintiffs bring these two related actions under section 2333(a) of the Anti-Terrorism Act of 1992, 18 U.S.C. § 2333(a), against Credit Lyonnais (the "Bank") for providing material support to the Islamic Resistance Movement, commonly known as HAMAS.  In prior proceedings, the Court approved stipulated protective orders limiting the disclosure and dissemination of certain information produced in discovery.  <u>See</u> Protective Order in <u>Strauss</u> filed on March 10, 2006 (ct. doc. 7) and Amended Protective Order in <u>Wolf</u> filed on July 18, 2007 (ct. doc. 26), which shall be collectively called the "Prior Orders."

     For the reasons discussed below, this Court finds good cause for modification of the Prior Orders in order to narrow the scope of information protected in future filings so as to minimize the volume of documents to be sealed and made inaccessible to the public.

BACKGROUND

After issuance of the Prior Orders, the defendant has apparently designated most of the materials it produced in discovery as highly confidential. Both sides have also sought leave to file under seal a number of submissions concerning various discovery disputes. This Court granted the sealing applications since the matters in dispute, for the most part, concerned financial information involving non-parties entitled to protection under the Prior Orders. However, when the parties sought leave to file pre-motion letters under seal, the Honorable Dora L. Irizarry denied the applications, noting that a showing of good cause is required for sealing. See Electronic Orders filed on 5/17/11 and 5/24/11 in both cases.

As a result, this Court encouraged the parties to agree on modifications to the Prior Orders which would address the concerns about public access raised by Judge Irizzary. This Court requested the parties to draft more specific definitions of confidential information to be protected and to propose procedures for minimizing the volume of materials filed under seal. After the parties could not agree on a revised protective order, the Bank submitted its own proposed changes. In its new definition of confidential information, the Bank proposed eliminating the first category of information protected in the Prior Orders concerning trade secrets and "sensitive commercial or financial information," and replacing the second category for "financial information of persons who are not parties to this litigation" with more specific descriptions of the types of

confidential information covered.  See letters of Lawrence
Friedman dated June 17, 2011, July 8, 2011 and October 4, 2011,
ct. docs. 256, 265, 282 (Strauss); 151, 169 (Wolf) discussing
Prior Orders, ¶¶ 1(a)(i) and 1(a)(ii).  The Bank also proposed
that the parties file all documents containing information within
the new definition under seal but also publicly file the same
documents with the confidential information redacted.  Id.

Most of the documents the defendant bank previously
designated as "confidential" or "highly confidential" pursuant to
the Prior Orders pertain to a former customer, Comité de
Bienfaisance et de Secours aux Palestinians a/k/a Comité de
Bienfaisance pour la Solidarite avec la Palestiene ("CBSP").
Plaintiffs initially argued that CBSP has no privacy interests
worthy of protection because it was designated as a Specially
Designated Global Terrorist ("SDGT") organization within the
meaning of 18 U.S.C. § 2339B.  They later expressed a preference
that all documents which contain information designated as
confidential be sealed, in light of their perceived practical
difficulties in having to make redactions of confidential
information contained in their summary judgment submissions.

In order to understand the nature and extent of the
redactions that would be required under the Bank's proposal, this
Court has made an in camera review of documents submitted at the
Court's request by the parties, which they believe constitute a
representative sampling of documents they would be submitting in
connection with the summary judgment motions to be filed.

DISCUSSION

The legal principles governing the modification of prior protective orders are well settled.  As the Supreme Court recognized in <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20 (1983), protective orders issued upon a showing of good cause as to materials produced in civil discovery are consistent with the First Amendment since "restraints placed on discovered, but not yet admitted information are not a restriction on a traditionally public source of information." <u>Id.</u> at 33, 37.  Once a protective order is issued, it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." <u>AT&T Corp. v. Sprint Corp.</u>, 407 F.3d 560, 562 (2d Cir. 2005) (citing <u>S.E.C. v. TheStreet.com</u>, 273 F.3d 222, 230 (2d Cir. 2001)).  Where there has been reasonable reliance on a previously issued protective order, the order should not be modified without a showing of "improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." <u>Martindell v. Int'l Tel. & Tel. Corp.</u>, 594 F.2d 291, 296 (2d Cir. 1979).

However, when protected discovery materials are used in court filings, the common law right of the public "to inspect and copy ... judicial records and documents" is implicated and gives rise to a presumption of access to judicial documents. <u>Nixon v. Warner Communic'ns, Inc.</u>, 435 U.S. 589, 597 (1978).  "The presumption of access is based on the need for federal courts, although independent --indeed, particularly because they are independent-- to have a measure of accountability and for the

-4-

public to have confidence in the administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II").

In determining whether the presumption of access under common law applies, the court must first determine whether a filed document is a "judicial document." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). If the presumption applies, the court must then determine the weight to be given that presumption and weigh the presumption of access against countervailing factors. These factors include, but are not limited to, "'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Id. at 120 (quoting Amodeo II, 72 F.3d at 1050). Since the right of access is a qualified right, courts must identify all the factors to be weighed, examining them "in light of the relevant facts and circumstances of the particular case" and "weighing the interests advanced by the parties in light of the public interest and the duty of the courts." United States v. Amodeo, 44 F.3d 141, 146 (2d Cir. 1995) (quoting Nixon, 435 U.S. at 599, 602).

The presumption of access unquestionably applies at this juncture since documents submitted in connection with a "motion for summary judgment are -- as a matter of law -- judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." Lugosch, 435 F.3d at 121 (emphases added). Where the presumption of public access

-5-

arises under the First Amendment, the Second Circuit has utilized two different approaches in determining whether access to judicial documents is required.  Id., 435 F.3d at 120.  Under a so-called "experience and logic" approach, courts "consider both whether the documents 'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the particular process in question.'"  Id. (citing Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 92 (2d Cir. 2004) (quoting Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 8 (1986)).  The second approach requires consideration of "the extent to which judicial documents are 'derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings.'"  Id. (quoting Hartford Courant, 380 F.3d at 93).

Whether the presumption of access arises under the common law or the First Amendment, "documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." Lugosch, 435 F.3d at 124.  Nonetheless, when "the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim."  Id.  As the Second Circuit has cautioned, "district courts [should] avoid sealing judicial documents in their entirety unless necessary [since t]ransparency is pivotal to public perception of the

judiciary's legitimacy and independence." <u>United States v. Aref</u>, 533 F.3d 72, 81-83 (2d Cir. 2008).

Since liability discovery is now completed and the parties are now engaged in briefing summary judgment motions, reassessment of the scope of the Prior Orders, especially the procedures set forth therein with respect to sealing documents, is not only appropriate at this time, but, indeed, necessary. After review, this Court finds that most provisions in the Prior Orders need not be changed since they primarily concern the flow of materials and information in pretrial discovery. As the Supreme Court explained, materials obtained in discovery "are not public components of a civil trial [and] were not open to the public at common law." <u>Seattle Times</u>, 467 U.S. at 33. Because "[m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action," the Court held that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." <u>Id.</u> Clearly the provisions in the Prior Order have served to assist in the discovery process and moving this case toward trial. See <u>In re September 11 Litigation</u>, 262 F.R.D. 274, 278 (S.D.N.Y. 2009) (denying motion of plaintiffs to set aside confidentiality designations made pursuant to stipulated protective orders). Thus, this Court sees no reason either to disturb the confidentiality designations made by the parties in accordance with the terms of the Prior Orders or to modify the

restrictions on the disclosure of the materials by the parties
both during and after termination of these actions.  The parties
had agreed to the terms of the Prior Orders before approval by
the Court and have relied on them during discovery without
objection to designations of confidentiality made.  Likewise, the
non-parties to whom the parties have provided documents
designated as confidential presumably have already signed
agreements required by the Prior Orders to limit use and
distribution of all confidential materials.

However, in light of concerns of public access to documents
filed in connection with any summary judgment motion to be filed
or other motion affecting determination of the merits of these
actions, the provision in the Prior Orders requiring the sealing
of all documents filed with the Court which contain information
designated as "confidential" or "highly confidential" cannot
stand.  Thus, the provisions in subsection 2(f) of the Prior
Orders are hereby vacated and are replaced and supplemented by a
Supplemental Protective Order to be filed herewith, which, as
discussed below, shall govern the filing of documents under seal,
as well as the public filing of redacted documents.

Materials to be Protected

The Bank proposes limiting confidential treatment to eight
categories of documents.  See letters of Lawrence Friedman dated
June 17, 2011, July 8, 2011 and October 4, 2011.  The categories
proposed are intended to replace the general category described
in section 1(a)(ii) of the Prior Orders as records "relating to

financial information of persons who are not parties to this litigation."  Six of the categories pertain to banking records concerning CBSP, a former customer of the Bank alleged by plaintiffs to be an Islamic charitable foundation that is part of the global network of charities known as the Union of Good through which HAMAS raises funds.  The seventh category covers the contents of declarations the Bank filed with the office for Treatment of Information and Action against Clandestine Financial Circuits ("TRACFIN"), the office in the French Ministry of the Economy, Finances and Industry responsible for monitoring financial transactions relating to money laundering and terrorism.  Relatedly, the eighth category covers the minutes of the statement made by a bank employee to French police.

Both financial records and certain reports by banks to government authorities have historically not been subject to public access in the United States.  Courts have recognized that banking customers have a "justifiable expectation of privacy that their names and financial records not be revealed to the public." In re Knoxville News-Sentinel Company, Inc., 723 F.2d 470, 477 (6th Cir. 1983); see also Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, 731 F.2d 112, 123 (2d Cir. 1984) (recognizing bank's duty under New York law to keep customer's records confidential); Peoples Bank of Virgin Islands v. Figueroa, 559 F.2d 914, 917 (3d Cir. 1977) (banks have a general duty to keep customer records confidential); Conopco, Inc. v. Wein, 2007 WL 2119507, at *2 (S.D.N.Y. 2007) (recognizing the privacy interests

in financial records which can be protected under a
confidentiality order).  In addition, financial records are
protected from disclosure under federal laws and regulations.  In
re Knoxville, 723 F.2d at 476-77 (discussing the restrictions on
financial institutions under the Right to Financial Privacy Act,
12 U.S.C. §§ 3401-3421; the Freedom of Information Act, 5 U.S.C.
§ 552(b)(8) and FDIC regulations); Fed. R. Civ. P. 5.2 (requiring
redaction of all but the last four digits of financial account
numbers).  Although the Bank has raised a concern over bank
secrecy only under French law, the fact remains that both
American courts and Congress have recognized the importance of
protecting the confidentiality of banking records.  The records
themselves plainly contain information "traditionally considered
private rather than public...."  Amodeo II, 71 F.3d at 1051.

     More importantly, as Judge Matsumoto previously recognized,
French bank secrecy laws prohibit the disclosure of materials
that plaintiffs have sought.  Strauss v. Credit Lyonnais, 249
F.R.D. 429, 438 (E.D.N.Y. 2008).  Although she held that French
law should give way to the need for discovery in these cases, she
also recognized that any potential hardship to the Bank for
violating French bank secrecy laws would be lessened by the
existence of the Prior Orders prohibiting public disclosure of
information produced by the Bank.  Strauss, 249 F.R.D. at 455.
Because the Prior Orders have, in fact, preserved the
confidentiality of the bank records produced in discovery, the
interests under French law in bank secrecy have not been

completely disregarded.  Continued protection of the bank records
in court filings would also promote interests under the doctrine
of international comity, which the Supreme Court described as
"the spirit of cooperation in which a domestic tribunal
approaches the resolution of cases touching the laws and
interests of other sovereign states."  <u>Societe Nationale
Industrielle Aerospatiale v. United States District Court</u>, 482
U.S. 522, 543 n.27 (1987).

The status of CBSP as a SDGT is not a reason for this court
to ignore longstanding practices and "logic (i.e., public
policy)"[1] which have prompted courts to prohibit public access to
financial records of litigants and non-parties in civil cases.
It is significant that the banking records also concern financial
transactions involving many other persons and entities who have
not been notified of their rights to object.

Moreover, while the parties undoubtedly will use discrete
items of information contained in the bank records in their
motions to be filed, the actual bank documents themselves are not
likely, either singly or collectively, to be important to
understanding the issues to be presented by the parties.  If
used, the bank records are likely to be filed in a large bundle
and cited as support for arguments made in other submissions.
Given the vigorous advocacy in this case, the parties will

---

[1] <u>See</u> <u>In re New York Times Co. to Unseal Wiretap</u>, 577 F.3d 401,
409 (2d Cir. 2009).

undoubtedly make sure that any data derived from bank records are accurately portrayed in the submissions.

Because of the countervailing factors of bank secrecy, privacy interests and comity and the marginal importance of access to the bank records to understanding the motions to be filed, this Court finds a compelling interest in sealing the documents produced by Credit Lyonnais which fall under its six proposed categories concerning CBSP.

The seventh category proposed by defendant covers the contents of declarations filed with TRACFIN.  Even though the fact that the Bank filed declarations with TRACFIN concerning CBSP is publicly known, the declarations were not made available to the plaintiffs until after this Court issued a letter request pursuant to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, 847 UNTS 231 (the "Hague Convention").

Comparable reports filed with governmental authorities in the United States are not generally publicly accessible under United States laws.  Financial institutions in the United States are required by law to file a Suspicious Activity Report ("SAR") when they suspect any suspicious transaction relevant to a possible violation of law or regulation.  Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999) (discussing section 5318(g) of the Annunzio-Wylie Anti-Money Laundering Act (the "Act"), 18 U.S.C. §5318).  Both the Act and regulations implemented by various federal agencies regulating financial institutions,

including the Federal Deposit Insurance Corporation (FDIC), the Office of the Comptroller of the Currency (OCC), the Office of Thrift Supervision (OTS) and the Financial Crimes Enforcement Network (FinCEN), prohibit the disclosure of SARs, even to persons involved in the transaction.  See United States v. LaCost, 2011 WL 1542072, at *6-7 (C.D.Ill. 2011); see also Hasie v. Office of the Comptroller of the Currency of the United States, 633 F.3d 361, 366 (5th Cir. 2011) (holding "SARs are 'non-public information'" not required to be released under the Freedom of Information Act, 5 U.S.C. § 1818(u), for use in civil litigation); Lee, 166 F.3d at 543; Weil v. Long Island Savings Bank, 195 F. Supp.2d 383 (E.D.N.Y. 2001) (prohibiting disclosure of SAR in civil case after examination of legislative history).

In addition, the concerns of international comity are greater as to this proposed category.  In requesting these reports, this Court stated that any disclosed material would be treated as "Highly Confidential" by the parties pursuant to the Prior Orders and would be disclosed only in accordance with the restrictions therein.  Since the Prior Orders provided that all materials designated as highly confidential would be filed under seal, the confidentiality promised in the letter request is a significant countervailing factor against public access.

Thus, this Court finds a compelling need to seal the TRACFIN declarations.  To the extent the parties submit the TRACFIN declarations with their motions, there is no need, and no point, in publicly filing redacted versions.  Although the proposed

category covers only the contents of the TRACFIN declarations, the remainder of the document provides minimal information making redaction meaningless.

The eighth category proposed concerns the minutes of the statement made by Robert Audren of Credit Lyonnais on September 19, 2002 to Bernard Baclet, Police Commander of the S.R.P.J. in Nancy.  These minutes were provided to this Court by the French Ministry of Justice in response to a letter request dated December 4, 2008 issued by this Court under the Hague Convention. See ct. doc. 183 (Strauss); 100 (Wolf).

As noted in the letter request, Mr. Audren made his statements to Mr. Bernard Baclet, Police Superintendent of the Detective Division of the Police Force in Nancy and pertain to a preliminary investigations of CBSP.  Under American law, statements made in connection with an investigation are protected by the law-enforcement privilege.  As explained by the Second Circuit, this privilege stems from the common-law executive privilege, whose purpose is to protect "the necessary functioning of a department of the executive branch."  In re The City of New York, 607 F.3d 923, 940, 944 (2d Cir. 2010) (quoting Black v. Sheraton Corp. of Am., 564 F.2d 531, 541-42 (D.C. Cir. 1977)). The information protected "includes information pertaining to 'law enforcement techniques and procedures,' information that would undermine 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and

-14-

information that would 'otherwise ... interfere[ ] with an investigation.'"   Id. at 944 (quoting In re Dep't of Investigation of the City of New York, 856 F.2d 481, 484 (2d Cir. 1988)).  "An investigation" that is protected by this privilege need not be the ongoing investigation to which the document pertains; the privilege is meant to protect "the ability of a law enforcement agency to conduct future investigations."  Id. at 944-45 (internal quotations omitted).

The law enforcement privilege clearly applies to the minutes obtained under the Hague Convention since the statements were made in connection of an investigation.  Although the privilege is qualified, there is a strong presumption against lifting the privilege.  Id. at 945.  Although the minutes may related to an inquiry into events not longer under investigation, they nonetheless may contain sensitive material leading to future investigations or reveal investigative techniques of the French police.  Also, the concerns of international comity discussed above with respect to the TRACFIN declarations are equally applicable here, because this Court stated in the letter request that the materials obtained would be treated as "highly confidential" pursuant to the Prior Orders.

This Court therefore finds a compelling need to seal the minutes of Mr. Audren's statements to the French police.

Last, as discussed at the last conference, the Prior Orders also protect documents or information that "contain or are derived from personal private financial, medical, employment,

educational information or disclose the current or past location of a party."  Prior Orders at ¶  1(a)(iii).  This category relates to documents or information that will be produced only after the parties engage in damages discovery.  While this Court agrees certain personal private information may merit protection from disclosure in public filings, such as bank records, as discussed above, this category, as defined, is broader than what courts have typically protected from public disclosure.  The scope of protection in public filings to be afforded information encompassed in these categories shall be reassessed when the parties engage in damages discovery.

Protected Information in Other Filings

Even though the documents in the proposed categories of documents discussed above may be sealed, there has been no showing of compelling need for sealing the entirety of any other document filed which utilizes protected confidential information and will be filed in connection with the summary judgment and Daubert motions that the parties are in the process of briefing. As they acknowledge, the documents to be filed will contain much material that is not confidential.  In light of the strong interest in insuring public access to documents that will be considered by the Court in determining the future dispositive motions to be filed, redactions of protected information suffice to preserve the need for confidentiality.

Plaintiffs initially objected to the descriptions of some of the categories proposed by the Bank.  After further elaboration

by the Bank's counsel at conferences held on June 28, 2011 and
July 22, 2011 and by letter dated July 8, 2011, the Court finds
the Bank's proposed descriptions sufficient to apprise the
plaintiffs of the types of information and bank documents
concerning CBSP that are protected.  Therefore, the following
nine categories of documents and information shall constitute
"Protected Information" to be protected in future filings as set
forth herein and a separate Supplemental Protective Order to be
filed herewith:

     (i)    specific transactions Comité de Bienfaisance et
de Secours aux Palestinians a/k/a Comité Bienfaisance pour
la Solidarite avec la Palestiene ("CBSP") conducted in its
accounts with the defendant Bank (including cash operations,
portfolio operations or lending operations);

     (ii)   CBSP's account numbers;

     (iii)  the types of CBSP accounts;

     (iv)   CBSP's transfer, collection, withdrawal and
payment instructions to the Bank;

     (v)    CBSP's account balances;

     (vi)   the identities of transferees and depositors
into CBSP accounts, including their names, addresses, the
location of their bank accounts and their bank account
numbers;

     (vii)  the contents of TRACFIN declarations the Bank
filed concerning CBSP;

(viii) the minutes of the statement made by Robert Audren of Credit Lyonnais on September 19, 2002 to Bernard Baclet, Police Commander of the S.R.P.J. in Nancy; and

(ix)   other personal or confidential documents and information that the Court may designate upon application of a party for leave to file under seal.

Determining the scope of permissible redactions is complicated by the fact that plaintiffs' counsel have also obtained information about CBSP and other entities alleged in the complaint to have supported HAMAS from sources other than the documents obtained from the defendant in discovery in these cases.  The fact that CBSP and certain other persons and entities engaged in financial transactions between 2000 to September 2003, when the Bank closed the CBSP accounts, is widely known.  As counsel advised, some records of financial transactions that would otherwise be protected herein have been made publically available as "open source" material from records seized by Israeli authorities.  See, e.g., Strauss, ct. doc. 266 at 30.  In the course of discovery, plaintiffs have demonstrated knowledge regarding these and other persons alleged to have assisted terrorist organizations based on information derived from sources other than documents obtained in discovery from the defendant and produced pursuant to the confidentiality provisions of the Prior Orders.  Clearly, information obtained by plaintiffs from public sources is not confidential and may be used as they deem appropriate.

Significantly, as discussed at prior conferences, plaintiffs are likely, in most instances, to aggregate the financial data contained in the banking records produced by defendant, rather than to focus on discrete transactions reflected in a single document or group of banking records.  That was the case with respect to a report by one of plaintiffs' experts, who did not discuss any specific transactions and grouped transactions in his report and summarized the transactions reflected in bank records in appendices to his report.

Because of the public availability of some of the documents or information in the bank records, the public knowledge that CBSP engaged in financial transactions through accounts at Credit Lyonnais and passage of eight years since the accounts were closed, this Court finds that compelling need has not been established to justify protection from disclosure of all information contained in the protected banking records.  Only information which would reveal specific transactions, including amounts, dates and persons involved, may be redacted.  In contrast, where a submission contains a discussion that does not disclose the specific amount or date of any transaction, the names of any customers, persons or entities involved, or account information, the interest in preserving the confidentiality of information incorporated in the submission may not be as great as the importance of access to enable understanding of the arguments made by the parties.

Accordingly, discussion of aggregated financial information need not be redacted if the amounts and dates of specific transactions are not disclosed.  For example, in its motion papers regarding contention interrogatories, the Bank had initially redacted a discussion regarding a spike in donations to CBSP following certain terrorist attacks.  The Court directed that this discussion be disclosed since the fact that CBSP received donations is widely known and the "spike" did not reveal any specific banking record produced.  <u>See</u> Third Amended Complaint (Strauss) at ¶¶  640, 657 (referring to published reports regarding CBSP and alleging defendant transferred "significant sums of money").

Also, to maximize public access and understanding, when referring in their submissions to non-parties who are associated with any private banking information that has not already been publicly disclosed, the parties should use non-identifying abbreviations in cases where the identity of a non-party is important to a discussion and there are repeated references to that non-party.

Finally, as acknowledged by the Bank, any documents or information that are otherwise publicly available or that plaintiffs obtained other than from defendants need not be sealed or redacted.  However, if, for ease of logical review, a publicly available document is submitted with a group of similar non-public documents, the publicly available document, upon

appropriate application, may be filed under seal with the other documents.

These guidelines provide a framework for redaction which, while requiring some effort on the part of the parties, are not unduly onerous given the importance of providing public access to information that may be material to determination of the motions to be filed.  Most recently, the parties have filed their redacted versions of their cross-motions to compel responses to contention interrogatories which had earlier been filed under seal.  See ct. doc. 276 in Strauss and ct. doc. 163 in Wolf.  The redacted filed versions correspond to the categories of protected information proposed by the Bank, as modified, and serve as a template for redactions that shall be made by the parties in their summary judgment submissions.

As for the protocol to be followed, as discussed at conferences on July 22, 2011 and September 27, 2011, each side will serve its motion papers on the opposing side in unredacted form.  The serving party must then serve a redacted copy and the receiving party then must respond with any further proposed redactions or opposition to redactions within the time limits as discussed at the last conference and as generally incorporated in a  Supplemental Protective Order filed herewith.  Should the parties be unable to resolve any dispute over redactions, they may seek guidance from the Court.

<u>CONCLUSION</u>

For the foregoing reasons, subsection 2(f) of the prior Protective Orders issued in these two cases are vacated and replaced by the Supplemental Protective Order which limits the scope of documents that may be filed under seal and requires that future documents filed herein which contain protected materials should be publicly filed with the protected information redacted.

**SO ORDERED.**

Dated:     Brooklyn, New York
           October 6, 2011

                          _/s/_____
                          MARILYN D. GO
                          UNITED STATES MAGISTRATE JUDGE