OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 201, HACKENSACK, NJ 07601   345 SEVENTH AVENUE, 21ST FLOOR, NEW YORK, NY 10001
T. 201.265.6400   F. 201.265.0303                     T. 646.380.0470   F. 646.380.0471

September 23, 2014

**VIA ECF**

Hon. Dora L. Irizarry
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Strauss, et al. v. Crédit Lyonnais, S.A.*, 06-cv-702 (DLI) (MDG)
            *Wolf, et al. v. Crédit Lyonnais, S.A.*, 07-cv-914 (DLI) (MDG)

Dear Judge Irizarry:

      We write on Plaintiffs' behalf in response to Defendant Crédit Lyonnais, S.A.'s ("CL" or "Defendant") September 19, 2014 letter concerning the Second Circuit's decision in *Gucci America, Inc., et al. v. Bank of China, et al.*, __F.3d __, 2014 WL 4629049 (2d Cir. Sept. 17, 2014), and to bring additional supplemental authority to the Court's attention. In *Gucci America*, a panel of the Second Circuit held that nonparty Bank of China ("BOC") had not waived its right to challenge personal jurisdiction when it first raised the issue in post-argument letter-briefs to the Court of Appeals, and that BOC was not subject to general jurisdiction based on the "essentially at home" rule invoked in *Daimler AG v. Bauman*, 134 S. Ct. 746, 761-62 (2014). *Gucci America* is inapposite for the reasons summarized below, including those set forth in *American Fidelity Assurance Company v. Bank of New York Mellon*, 2014 WL 4471606 (W.D. Okla. Sept. 10, 2014) (attached hereto as Exhibit A).

      *First*, unlike CL, BOC was a *nonparty* drawn into the *Gucci* plaintiffs' proceedings to freeze defendants' assets and to provide discovery concerning the defendants' conduct. For this reason, the *Gucci* Panel explained:

> To the extent that plaintiffs attempt to ground their waiver argument on Federal Rule of Civil Procedure 12(h), *we note that the waiver provisions of that rule are inapplicable* because the Bank is not a "party" that could fail to assert its personal jurisdiction defense in an answer or a motion to dismiss.

*Gucci*, 2014 WL 4629049, at *11 n.14 (emphasis added). Although BOC's nonparty status did not alter the applicability of personal jurisdiction law, it did affect the applicability of Fed. R.

Civ. P. 12(h)(1) and its clear provision for procedural waiver. Here, in contrast, those waiver provisions *are* applicable to Defendant.

The original *Strauss* Complaint expressly alleged:

Credit Lyonnais is subject to personal jurisdiction in the United States pursuant to Fed. R. Civ. P. 4(k) because, among other things, *it continuously and systematically does business in the United States*. Defendant is also subject to personal jurisdiction in the United States pursuant to 18 U.S.C. §2339B(d)(1)(D) *because it has committed tortious acts within the United States by transferring funds through the United States for the benefit of HAMAS, and has purposefully availed itself of United States jurisdiction in the course of continuing the wrongful acts alleged herein.*

Complaint (Feb. 16, 2005), ¶4 (emphasis added). The first sentence alleges general jurisdiction; the second, specific jurisdiction.[1] As Plaintiffs' Opposition Memorandum documents, identical allegations were set forth in each of Plaintiffs' Amended Complaints. Opp. Mem. at 4. By omitting the defense of lack of personal jurisdiction from its motion to dismiss and from its answer, CL waived that defense by the plain terms of Rule 12(h)(1). *Id*. at 4-6.

Indeed, the Bank clearly believed it had a basis to challenge personal jurisdiction by raising it during discovery in December 2006. *See id*. at 2, 9-10. Judge Matsumoto recognized this challenge for the belated Rule 12(b)(2) challenge that it was, and she rejected it. *Strauss v. Crédit Lyonnais S.A.*, 242 F.R.D. 199, 203 n.5 (E.D.N.Y. 2007). CL did not seek reconsideration or Rule 72 review of that decision, but instead actively and aggressively defended the case for the next seven years *and* requested summary judgment, conduct that itself results in forfeiture of

---

[1] The Second Circuit's decision in *Weiss et al. v. National Westminster Bank, plc*, No. 13-161 (2d Cir. Sept 22, 2014), attached hereto as Exhibit B, further supports and reinforces Plaintiffs' Opposition Memorandum's ("Opp. Mem.") explanation that courts can *especially* exercise personal jurisdiction over foreign defendants who repeatedly commit acts of international terrorism against U.S. citizens. *See* Opp. Mem. at 15-17. The Second Circuit held:

In *Morrison v. National Australia Bank Ltd.*, the Supreme Court recognized a presumption against extraterritoriality pursuant to which we must presume a statute does not apply extraterritorially "unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect." 561 U.S. 247, 255 (2010) (internal quotation marks and citation omitted). *Congress clearly expressed its intention for § 2333(a) to apply extraterritorially by focusing on "international terrorism" and defining it to include exclusively activities that "occur primarily outside the territorial jurisdiction of the United States."* 18 U.S.C. § 2331(1); *see In re September 11 Litig.*, 751 F.3d 86, 93 (2d Cir. 2014) ("The purpose of the ATA was '[t]o provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United Sates nationals.'" (quoting H.R. 2222, 102d Cong. (1992))). Accordingly, we find that NatWest may be found liable under § 2333(a) for conduct that occurred in the United Kingdom.

*Id.*, slip op. at *8 n.5 (emphasis added). *See also id.* at 14-15.

any theoretically revivable Rule 12(b)(2) affirmative defense under *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61-62 (2d Cir. 1999). *See* Opp. Mem. at 4-8.

*Second*, Gucci invoked and quoted *Daimler's* assertion that "a corporation may … be subject to general jurisdiction in a state only where its contacts are so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home in that state.'" *Gucci* at *10, (citing *Daimler*, 134 S. Ct. at 761-62). But this assertion in *Daimler* was not new; *Daimler* simply quoted *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011):

> [T]he inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense "continuous and systematic," it is whether that corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." 564 U.S., at – ––, 131 S. Ct., at 2851.

*Daimler*, 134 S. Ct. at 761 (citation to *Goodyear* in the original).

Thus, although the *Gucci* Panel correctly observed that *Daimler* applied the *Goodyear* "essentially-at-home" rule to a foreign corporation based on its in-state subsidiary's contacts, *Daimler* was *not* the first time the Supreme Court declared this rule. In fact, two prior 2014 Second Circuit decisions held that *Daimler* merely <u>reaffirmed</u> *Goodyear*'s essentially-at-home rule. *See In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 39 (2d Cir. 2014) (*Daimler* "reaffirms" *Goodyear*'s general jurisdiction standards); *Sonera Holding B.V. v. Cukurova Holding, A.S.*, 750 F.3d 221, 222 (2d Cir. 2014) (*Daimler* "*reaffirms* that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in the state.") (emphasis added)). In short, the *Gucci* Panel simply applied the *Goodyear* "essentially-at-home" rule to BOC's unique facts (a nonparty's contacts through branch offices).

That rule was available no later than 2011, when *Goodyear* was decided. *Holzsager v. Valley Hosp.*, 646 F.2d 792 (2d Cir. 1981) explains that a potentially revived Rule 12 defense must be asserted "as soon as [its] cognizability is made apparent." *Id.* at 796. Thus, a newly available defense is subject to waiver "by failure to assert it seasonably, by formal submission in a cause, or by submission [to the court's jurisdiction] through conduct." *Gilmore v. Palestinian Interim Self Gov't Auth.*, ____ F. Supp. 2d. _____, 2014 WL 2865538, at *2 (D.D.C. Jun. 23 2014) citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168 (1939).

*Third*, CL also has not demonstrated that it was unequivocally apparent that raising the defense would have been futile, as the recent *American Fidelity* decision shows. In *American Fidelity*, the defendant bank, Bank of New York ("BNY"), like CL, argued that *Daimler* had revived its Rule 12(b)(2) defense, and, again like CL, argued that *Holzsager* permitted the defense's re-assertion. The court held that BNY had failed to establish that it would have been futile to challenge the plaintiff's jurisdictional assertions. *Id.* at *3.

> [T]he standard Defendant relies upon was not pronounced by the Supreme Court in *Daimler,* but was pronounced more than two years earlier in *Goodyear Dunlop Tires Operations, S.A. v. Brown,* ___U.S.___, 131 S. Ct. 2846 (2011). And unlike the case law relied upon by Defendant to support the unavailability of the defense, as discussed below, *Daimler* did not announce a new constitutional rule or overrule prior precedent. *Compare Holzsager,* 646 F.2d at 795 (personal jurisdiction defense not waived where intervening Supreme Court decision declared unconstitutional state law permitting exercise of personal jurisdiction through quasi-in-rem attachment of insurance policies issued by resident insurers). Nor has Defendant shown the defense would have been futile under pre-*Daimler* precedent. *See Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004) (upholding waiver of defense where party failed to demonstrate it would have been futile to raise if timely asserted where defense was "fairly available"; absence of precedent directly on point does not excuse a party's failure to assert an available defense").

*American Fidelity*, at *3.

Furthermore, *American Fidelity* noted that "circuit courts to address general jurisdiction post-*Daimler* have recognized that it 'reaffirmed' *Goodyear*," citing the Second Circuit's decisions in *Sonera Holding* and *In re Roman Catholic Diocese*, among other circuit court decisions. *Id.* at *4 & n.6. In fact, *American Fidelity* emphasized that the latter decision not only applied the essentially-at-home standard, but also "relied on prior Supreme Court precedent regarding the exercise of general personal jurisdiction in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)." *Id.* at *4 n.6. That citing such precedent might not have succeeded is no justification for failing to make and preserve the personal jurisdiction argument. A defense has only to be "fairly available," not a lead-pipe cinch, and given the Supreme Court precedents, it was hardly "futile" to argue it.

*American Fidelity* also distinguished both *Holzager* as well as *Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009),[2] the same case CL continues to rely upon and which Plaintiffs' Opp. Mem. addressed at 10-11. The First Circuit opinion *American Fidelity* cites, *Bennett v. City of Holyoke*, elaborates that *Holzager*'s narrow exception to the "raise-or-waive" doctrine applies only "when the defense, if timely asserted, would have been futile under binding precedent"[3] and that the exception is inapplicable when "no binding rule in this circuit ... necessarily foredoomed an objection."[4] Moreover, "[t]he absence of precedent *directly* on point" did not excuse the party's failure to assert an otherwise potentially available defense. *Id.*

---

[2]   *American Fidelity* at *3.

[3]   *Id.* at 7.

[4]   *Id.*, quoting *United States v. Lopez–Pena*, 912 F.2d 1542, 1549 (1st Cir. 1989).

(emphasis added).[5] Certainly after *Goodyear* declared the "essentially-at-home" rule in 2011 and rejected a claim of general jurisdiction over foreign subsidiaries, issues of general personal jurisdiction over foreign corporations were "*very much in play*" and the absence of precedent "*directly*" on point did not mean it was "*unequivocally apparent*" that CL's Rule 12(b)(2) defenses, despite having only slim chances of success, were therefore "*foredoomed*."

*Fourth*, *American Fidelity* also explains why this Court should reject CL's argument that it did not challenge specific jurisdiction because it believed it had enough contacts to establish general jurisdiction (a belief that, in any case, cannot be squared with Defendant's 2006 representation that it "does not conduct business in the United States" and that "its customer's account is located in France"). By the same argument, *American Fidelity* found that BNY "*concedes* it could have previously challenged specific personal jurisdiction…." *American Fidelity*, at *2 (emphasis added). Here, too, CL conceded that it could have previously challenged specific jurisdiction by so vigorously pressing this defense now, and by *denying* (in its Answer to the original complaint) Plaintiffs' jurisdictional allegation that it committed tortious acts in the United States. *See also* Opp. Mem. at 1, 5-6.

*Finally*, Defendant's failure to assert *any* jurisdictional defense at the start of this lawsuit or even in 2011, when the "essentially-at-home" rule was declared in *Goodyear,* means that Plaintiffs have never had the full jurisdictional discovery to which they would have been entitled on a Rule 12(b)(2) motion. Nor have they had such discovery concerning CL's licensing in New York, which could independently operate as consent to jurisdiction. *See Gucci* at *11, n.15 (citing *Daimler*, 134 S. Ct. at 755-65, quoting *Goodyear*, 131 S. Ct. at 2856, for principle that general jurisdiction defines the scope of a court's jurisdiction when an entity "has not consented to suit in the forum"). The very purpose of Rule 12(h)'s waiver provision is to ensure that jurisdictional defenses are raised early enough to permit such discovery, *before* the parties engage in merits discovery, extensive motion practice, and summary judgment practice, and *before* the Court spends time and precious judicial resources deciding summary judgment. Now, *eight years after* CL filed its Rule 12 motion, *after* discovery (including extensive motion practice relating to bank secrecy), three years *after* the Supreme Court announced what *Daimler* itself called the "pathmarking" essentially-at-home rule in *Goodyear*, two years *after* the parties briefed summary judgment, and a year *after* this Court wrote a 61-page opinion denying summary judgment, Defendant's afterthought jurisdictional argument comes far too late. Allowing CL now to assert jurisdictional arguments it previously neglected to assert would create precisely the enormous waste of judicial and party resources that Rules 12(g)-(h) were enacted to prevent.

---

[5] *See also U.S. v. Guzman*, 419 F.3d 27, 31 (1st Cir. 2005) (exception to "raise or waive" doctrine "applies only when the futility of raising an objection or defense was *unequivocally apparent* at the time in question…. The bottom line is that, at the time the district court resentenced the appellant, the constitutionality of the guidelines was *very much in play*. Under these circumstances, there is no principled basis for excusing the appellant's procedural default."). (Emphasis added.)

For these reasons and those set forth in Plaintiffs' Opposition Memorandum and prior supplemental submissions, CL's Motion should be denied.

Respectfully submitted,

Joshua D. Glatter

Enclosure

cc: All counsel