**OSEN LLC**
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 University Plaza, Suite 201, Hackensack, NJ 07601
T. 201.265.6400   F. 201.265.0303

345 Seventh Avenue, 21st Floor, New York, NY 10001
T. 646.380.0470   F. 646.380.0471

October 20, 2015

**VIA ECF**

Hon. Dora L. Irizarry
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Strauss, et al. v. Crédit Lyonnais, S.A.*, 06-cv-702 (DLI) (MDG)
      *Wolf, et al. v. Crédit Lyonnais, S.A.*, 07-cv-914 (DLI) (MDG)

Dear Judge Irizarry:

We write on all Plaintiffs' behalf in response to Defendant's October 16 and 19, 2015 letters, which contain misleading information.

First, Defendant's October 16 letter states:

> The parties agree that CL made five transfers at the request of its customer CBSP that contacted the United States and on which plaintiffs base their claims. Those five transfers constitute 0.9% of the 550 transfers that CL made at CBSP's request, and total $205,000.

CL 10-16-15 Ltr. at 2.

During the parties' pre-submission discussions, Plaintiffs provided defense counsel with the information contained in the forensic accounting report prepared by Plaintiffs' expert (Mr. Wayne Geisser) reflecting the total number of transfers CL conducted on CBSP's behalf for the Hamas-controlled entities at issue (the "Hamas Entities"). That number was 291,[1] and defense counsel <u>never</u> contested that number.

Instead, in its October 16 letter (*Strauss* ECF No. 336), Defendant apparently identified the total number of transfers CL made at CBSP's request to *all* entities worldwide (i.e., including

---

[1] Upon further review of the available records, Plaintiffs have determined that the correct number of transfers to the Hamas Entities was 285. Although Mr. Geisser's original report identified 291 transfers, he later issued a supplemental report removing 6 transfers that did not go to the Hamas Entities.

transfers to entities other than the Hamas Entities and transfers to vendors that were providing services to CBSP) as 550,[2] without first conferring with Plaintiffs' counsel or providing them with a list of the transfers or a basis to confirm or contest the number. Not only does this inflate the denominator in the ratio that Defendant stresses, but it also does not indicate what percentage of this larger number passed through New York. The net result is an apples-to-oranges comparison, calculated to downplay the significance of the U.S.-based transfers.

To avoid further confusion, Plaintiffs have identified the following transfers based on the available CL-produced records:

| | |
|---|---:|
| Total number of transfers CL made at CBSP's request to Islamic "charitable entities": | **404** |
| Total number of transfers CL made at CBSP's request to Islamic "charitable entities" that passed through the United States: | **8** |
| Total number of transfers CL made at CBSP's request to identified Hamas Entities: | **285** |
| Total number of transfers CL made at CBSP's request to identified Hamas Entities that passed through the United States: | **5** |

Second, Your Honor's assessment regarding the blocked El Wafa transfer's relevance to proving Defendant's scienter has no bearing upon the Court's jurisdictional analysis of whether the communications surrounding CBSP's transfer to El Wafa through New York implicated specific jurisdiction. To cite merely one example from the record, Alain Marsat, CL's deputy head of compliance, testified that the blockage in New York represented "for us an additional alert" about CBSP that caused the CL's compliance department in France to refocus on CBSP. Goelman Decl. in Support of Summary Judgment Ex. 28 (Marsat Dep. 173:4-8, Dec. 10, 2008). As Plaintiffs noted during oral argument, "Contacts are not just transferring money." 10-8-15 CL Tr. at 56.

---

[2]  Based on Plaintiffs' necessarily cursory review of a list of transfers defense counsel provided this morning, approximately 98 transfers were included by Defendant based solely on CBSP account statements provided during discovery. Defendant produced backup documentation for many but not all of the transfers listed on the account statements. Thus, it is not always possible to determine whether any of these transactions passed through the United States.

Hon. Dora L. Irizarry, U.S.D.J.
October 20, 2015
Page 3 of 3

      Plaintiffs have consistently maintained that relevant contacts for purposes of specific personal jurisdiction under the 18 U.S.C. §2334(a) nationwide service provision (the ATA long-arm provision) and the Fifth Amendment due process analysis include transfers at CBSP's request to the Hamas Entities in the Palestinian Territories, other contacts with New York concerning CBSP and any "alerts" they raised, and the foreseeable effects of the Defendant's material support on the American nationals who were injured by attacks attributable to Hamas, whether or not any single such contact or effect alone would suffice.

      As Plaintiffs noted in their October 16 letter, CL's contacts with the United States that relate directly to its Specially Designated Global Terrorist customer CBSP exceed the minimum required to satisfy the U.S. Constitution and permit the Court to exercise personal jurisdiction over Defendant in this case.

                                     Respectfully submitted,

                                       /s/ Gary M. Osen

cc:    All Counsel