UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MOSES STRAUSS, *et al.*,                            :
                                                    :
                Plaintiffs,         :        **MEMORANDUM AND ORDER**
                                                    :        06-cv-702 (DLI) (MDG)
     -against-                                    :
                                                    :
CRÉDIT LYONNAIS, S.A.,                              :
                                                    :
                Defendant.          :
                                                    :
------------------------------------------------------------ x
BERNICE WOLF, *et al.*,                             :
                                                    :
                Plaintiffs,         :
                                                    :        07-cv-914 (DLI) (MDG)
    -against-                                     :
                                                    :
CRÉDIT LYONNAIS, S.A.,                              :
                                                    :
                Defendant.          :
                                                    :
------------------------------------------------------------ x

**DORA L. IRIZARRY, Chief United States District Judge:**

On February 28, 2013, the Court granted in part and denied in part Defendant Credit Lyonnais's motion for summary judgment (the "Decision").[1] (*See* 2/28/13 Op. & Or., Dkt. Entry No. 232.) In the Decision, the Court dismissed the claims brought by Shlomo Tratner, individually and on behalf of the Estate of Tiferet Tratner, in connection with the September 24 Attack only, and allowed the claims based on the remaining fourteen attacks to proceed. Additionally, the Court

---

[1] This Order is written for the parties and familiarity with the underlying facts and circumstances of this action is assumed. For a full discussion of this action, see the Decision.

granted Hillel Plaintiffs' motion for summary judgment to the extent that they proved Hamas' responsibility for the Café Hillel attack.

On March 14, 2013, Defendant moved for partial reconsideration. (*See* Motion for Reconsideration, Dkt. Entry No. 342.) By Order dated February 10, 2014, the Court terminated Defendant's motion without prejudice, pending the disposition of Defendant's motion to dismiss for lack of personal jurisdiction. On March 31, 2016, the Court denied Defendant's motion, and on August 2, 2016, the Court granted Defendant permission to renew its motion for partial reconsideration. On December 6, 2016, Defendant filed the instant motion for partial reconsideration. (*See* Motion for Reconsideration ("Mot. for Rec."), Dkt. Entry No. 422.) For the reasons set forth below, Defendant's Motion for Reconsideration is denied in part and granted in part.

## DISCUSSION

### I. Legal Standard

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transport, Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995). Typical grounds for reconsideration include "'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir.1992)). "[A] motion for reconsideration is not an opportunity for litigants to reargue their previous positions or present new or alternative theories that they failed to set forth in connection with the underlying motion."

*Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp.2d 261, 287 (E.D.N.Y. 2013).

## II. Admissibility of Israeli Military Court Convictions

Defendant seeks reconsideration of the admissibility of the Israeli military court convictions. Defendant asserts that the Court overlooked Professor Gross's admission that, in practice, Israeli military courts do not comply with due process and, thus, their verdicts are not reliable, even if those courts are designed to comply with due process in theory.

The Court did not overlook Defendant's interpretation of Gross's statements. In fact, the Decision specifically refers to – and rejects – them. (*See* Decision at 52-53.) Defendant has introduced no new controlling case law or data, nor has Defendant conveyed that the Court clearly erred in ruling that Gross's statements affected "the weight of the evidence, not admissibility, particularly where it appears on this record that the accused were afforded more than a modicum of due process." (*Id.* at 53.)

Defendant asserts that Gross drew a distinction between Israeli military court due process "in theory" and "in practice." (Mot. for Rec. at 8.) This is, at best, a self-serving interpretation, as Gross does not draw these lines. Ironically, while Defendant primarily objects to Gross's report because his experiences do not qualify him to address Israeli military court due process in practice from 2004 to 2006, Defendant supports its position that the courts lacked due process in practice from 2004 to 2006 from a book Gross published in *2004*. (CL 56.1 St. ¶ 623-33.)

In further support of its theory vs. practice argument, Defendant cites *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 142 (2d Cir. 2000) for the proposition that, where "there is evidence that foreign courts did not comply with due process in practice, the fact that such courts were designed to comply with due process in theory is irrelevant." (Mot. for Rec. at 8.) Defendant quotes *Bridgeway* out of context.

In *Bridgeway,* plaintiff asked a New York federal court to enforce a judgement rendered by the Supreme Court of Liberia. Defendant "[came] forward with sufficiently powerful and uncontradicted documentary evidence describing the chaos within the Liberian judicial system during the period of interest to this case . . . the Liberian judicial system was in a state of disarray." 201 F.3d at 141-42. In response, and to support its position that the Liberian judicial system exercised due process, plaintiff asserted that the procedural rules of Liberia were modeled off of New York procedural rules. The Second Circuit described the latter comparison as concerning "the design of the Liberian judicial system," which said "nothing about its practice." The comparison, along with some conclusory and indirect statements regarding the Liberian judicial system generally, was insufficient to establish plaintiff's stance on Liberian due process. *Id.* at 142. Still, the Second Circuit, in a footnote, wrote: "[e]vidence concerning the design of a judicial system might be sufficient, in the absence of countervailing evidence. But where a party presents evidence concerning the actual practice of a judicial system, evidence about design is not likely to create a genuine issue of material fact." *Id.* n.2.

Compared to the "powerful and uncontradicted documentary evidence" describing the "disarray" and "chaos" of the Liberian judicial system, Defendant's assertions about Gross's 2004 position on the practice of the Israeli military courts from 2004 to 2006 are limp and not worthy of reconsideration. The Court maintains that, based on the record in this case, the accused were afforded more than a modicum of due process by the Israeli military courts.

### III. Hamas Responsibility for the January 29, 2004 Attack

Defendant next moves the Court to reconsider its ruling on the January 29, 2004 Bus No. 19 attack ("Bus No. 19 Attack"). In its Decision, the Court found that Plaintiffs brought forth sufficient admissible evidence to create a genuine issue of material fact as to Hamas's

4

responsibility for the Bus No. 19 Attack. (Decision at 5.) Two years after the Court issued the Decision, the Honorable Brian M. Cogan, U.S. District Judge of this Court, in *Linde v. Arab Bank, PLC,* 97 F. Supp.3d 287, 330 (E.D.N.Y. 2015), found that the Al-Aqsa Martyrs Brigade ("AAMB") – and not Hamas – was responsible for the Bus No. 19 Attack. Defendant asserts that Judge Cogan's ruling collaterally estops Plaintiffs from arguing that Hamas committed the attack. The Court agrees for the reasons below.

Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in a prior proceeding. *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir. 1995). Four elements must be met for collateral estoppel to apply: (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been full and fair opportunity for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits. *Id.* at 368. Defendant argues, and Plaintiffs do not dispute, that: (1) the issues of both proceedings involve Hamas's responsibility for the Bus No. 19 Attack; (2) the same plaintiffs were involved in *Linde;* and (3) the issue actually was litigated to support a valid judgment on the merits.

Plaintiffs argue that Defendant waived collateral estoppel by failing to raise it in its amended answer. Federal Rule of Civil Procedure 8(c) requires parties to raise affirmative defenses, such as estoppel, in the pleadings. *Rose v. AmSouth Bank of Florida,* 391 F.3d 63, 65 (2d Cir. 2004). "[T]he purpose of requiring collateral estoppel to be pled as an affirmative defense 'is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate.'" *Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir. 2003) (quoting *Blonder–Tongue Labs. v. Univ. Of Ill. Found.,* 402 U.S. 313, 350, 91

5

S.Ct. 1434, 28 L.Ed.2d 788 (1971)). The Second Circuit has recognized that "waiver of an unpleaded defense may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *Rose,* 391 F.3d at 65.

Although Defendant did not add collateral estoppel to its amended answer of July 1, 2016, Defendant raised collateral estoppel in its pre-motion conference letter of June 22, 2016, to which Plaintiffs responded. Plaintiffs do not argue, nor can they, that they were unfairly prejudiced by Defendant's failure to raise collateral estoppel in its amended answer. *See Curry v. Syracuse,* 316 F.3d at 331 (finding that the district court did not abuse its discretion in permitting a collateral estoppel defense that was raised for the first time in the reply memorandum to the summary judgment motion because plaintiff was given leave, and additional time, to file a sur-reply, in which plaintiff opposed the application of collateral estoppel. The court reasoned, "if the primary purpose of requiring collateral estoppel to be pled as an affirmative defense is providing notice and an opportunity to respond, that purpose was served in the instant case.")

Defendant reasonably argues that it was not dilatory in raising collateral estoppel because all motions in this action were stayed until the Court granted Defendant's motion to dismiss for lack of personal jurisdiction on March 31, 2016. Thus, the Court finds that, even though the decision on which Defendant bases its collateral estoppel argument was issued on April 8, 2015, Defendant was not dilatory in raising collateral estoppel until June 22, 2016.

Plaintiffs next argue that there are "special circumstances" here that should bar application of collateral estoppel. (Opp. at 12.) Plaintiffs assert that, because their settlement in *Linde* "tabled" their motion for reconsideration of Judge Cogan's decision concerning Hamas's involvement in

6

the Bus No. 19 Attack, Judge Cogan's ruling is "factually disputed" and "not now appealable." (*Id.* at 13-14.)

The Court is unpersuaded by Plaintiffs. Plaintiffs cite no case law supporting their position that a ruling subject to a motion for reconsideration has no preclusive effect. Plaintiffs voluntarily "tabled" the motion for reconsideration when they settled the *Linde* case, rather than wait for the adjudication of that motion. Plaintiffs cannot exploit the timing of settlement to avoid issue preclusion.

Furthermore, Plaintiffs' argument that Judge Cogan's ruling is not final because it is not appealable contradicts controlling case law and thus fails. In *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 89 (2d Cir. 1961), the Second Circuit, in examining whether a nonfinal decision under 28 U.S.C. § 1291 is subject to issue preclusion, reasoned:

> 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.

*Id. See also Metromedia Co. v. Fugazy,* 983 F.2d 350, 366 (2d Cir. 1992) ("As to the need for finality of decision, collateral estoppel, unlike appealability under 28 U.S.C. § 1291 (1988), does not require a judgment which ends the litigation and leaves nothing for the court to do but execute the judgment. Rather the concept of finality for collateral estoppel purposes includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.") (quoting *Zdanok v. Glidden Company, Durkee Famous Foods Division,* 327 F.2d 944, 955 (2d Cir. 1964)); *Kurlan v. C.I.R.,* 343 F.2d 625, n.1 (2d Cir. 1965) ("general expressions that only final judgments can ever have collateral estoppel effect are considerably overstated."); *Rosen v. Paul, Hastings,*

7

*Janofsky & Walker LLP,* No. 05 CIV. 4211 (LAK), 2005 WL 1774126, at *5 (S.D.N.Y. July 28, 2005) (finding that collateral estoppel precluded plaintiff from arguing that the state court lacked jurisdiction to confirm an arbitration award merely because plaintiff had moved for reconsideration of the arbitration award in the arbitration forum).

Plaintiffs next argue that collateral estoppel should not apply because Plaintiffs' claims "changed dramatically when JASTA added 18 U.S.C. § 2333(d) to the ATA." (Opp. at 15.) Section 2333(d) adds a secondary liability provision to the ATA, which reads as follows:

> In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

Plaintiffs argue that because Judge Cogan only ruled on whether Hamas *committed* the Bus No. 19 Attack, and not whether Hamas committed, planned, *or authorized* the Bus No. 19 Attack, collateral estoppel is not appropriate.

Plaintiffs misread the statute. Section 2333(d) creates a cause of action for injuries arising from terrorism committed, planned, or authorized by a foreign terrorist organization against any person who aids and abets or conspires with the person *who committed* the terrorist act. By the plain language of the statute, § 2333(d) does not create liability against a person who aids and abets or conspires with the person who merely authorized (rather than committed) the terrorist act, as Plaintiffs suggest.

### IV. The March 7, 2003 and October 22, 2003 Attacks

Defendant asserts that the Court overlooked that the indictment evidencing that Hamas committed the March 7, 2003 Attack and Shaked's eyewitness testimony concerning the October

22, 2003 Attack are inadmissible. (Mot. for Rec. 19, 22.) Defendant previously raised the former argument on summary judgment, but failed to raise the latter. A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple,'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (internal citation omitted).

Despite Defendant's assertion that the Court overlooked "black letter law" in admitting the Israeli military court indictment as evidence that Hamas committed the March 7, 2003 Attack, Defendant does not cite any controlling decision. *See Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009) ("Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit[.]") (internal citation omitted). Rather, Defendant cites several criminal cases in which courts precluded admission of U.S. indictments as evidence of the defendants' guilt. (Mot. for Rec. at 19-21.) That is not the issue here. As this Court already has ruled, the Israeli government indictment blaming Hamas for the March 7 Attack is admissible as a hearsay exception as a public Israeli government report. (Decision at 53.)

Defendant's argument that Shaked's eyewitness testimony concerning the October 22, 2003 Attack is inadmissible because any testimony about the wearing of a green bandana is non-verbal hearsay is raised for the first time in its motion for reconsideration. *See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,* 322 F.3d 147, 159 (2d Cir. 2003) ("Generally, we will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration.") Nonetheless, Defendant's argument is off-point. The Court did not rule that the green bandana *per se* is evidence of Hamas's responsibility for the

October 22, 2003 Attack. Rather, the Court stated that Shaked's eyewitness account of the aftermath of the attack is admissible.

Defendant has not met the threshold legal standard for reconsideration for its arguments concerning the March 7, and October 22, 2003 Attacks. Accordingly, it's motion for reconsideration is denied as to those events.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for reconsideration is granted only to the extent that Plaintiffs are collaterally estopped from arguing that Hamas committed the January 29, 2004 Attack, and is denied in all other respects.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2017

_____/s/_____
DORA L. IRIZARRY
Chief United States District Judge