UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- x
MOSES STRAUSS, *et al.*,  :
                                      Plaintiffs,  :  **MEMORANDUM AND ORDER**
                                        :  06-cv-702 (DLI) (RML)
                 -against-  :

CRÉDIT LYONNAIS, S.A.,  :

                                      Defendant.  :
---------------------------------------------------------- x
BERNICE WOLF, *et al.*,  :

                                      Plaintiffs,  :
                                        :  07-cv-914 (DLI) (RML)
                 -against-  :

CRÉDIT LYONNAIS, S.A.,  :

                                        Defendant.  :
---------------------------------------------------------- x

**DORA L. IRIZARRY, Chief United States District Judge:**

Pursuant to the 2013 statute of limitations amendment to the Anti-Terrorism Act ("ATA"), Plaintiffs' claims arising from five attacks (the "Reinstated Attacks"), previously dismissed by this Court as time barred, were reinstated. On September 26, 2016, Defendant moved for summary judgment on the Reinstated Attacks. (*See* Motion for Summary Judgment on Reinstated Claims ("Motion"), Dkt. Entry No. 427.) Plaintiffs served their opposition brief on November 3, 2016. (*See* Opposition to Defendant's Motion for Summary Judgment on Reinstated Claims ("Opposition"), Dkt. Entry No. 430.) Defendant served its reply brief on December 6, 2016. (*See*

Reply Memorandum of Law ("Reply"), Dkt. Entry No. 433.)  For the reasons set forth below, Defendant's Motion is denied in part and granted in part.

## DISCUSSION

### I. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmoving party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.,* 156 F. 3d 396, 400 (2d Cir. 1998).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F. 3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Grp., Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

### II. Background

On February 28, 2013, the Court granted in part and denied in part Defendant's motion for summary judgment (the "2013 Decision").[1]  (*See* 2/28/13 Op. & Or., Dkt. Entry No. 232.)  In the

---

[1] This Order is written for the parties and familiarity with the underlying facts and circumstances of this action is assumed.  For a full discussion of this action, see the 2013 Decision.

2

2013 Decision, the Court dismissed the claims brought by Shlomo Tratner, individually and on behalf of the Estate of Tiferet Tratner, in connection with the September 24 Attack only, and allowed the claims based on the remaining fourteen attacks to proceed. Additionally, the Court granted Hillel Plaintiffs' motion for summary judgment to the extent that they proved Hamas' responsibility for the Café Hillel attack. Furthermore, the Decision addressed nearly the same issues that Defendant raises here pertaining to the Reinstated Attacks.

### III. Defendant's Arguments

Defendant asserts that Plaintiffs have brought forth inadmissible evidence only to prove that Hamas perpetrated the Reinstated Attacks. (Motion at 2.) Defendant urges the Court to rule that the testimony of two of Plaintiffs' experts, Ronni Shaked and Eli Alshech, and the testimony of six fact witnesses are inadmissible. (Motion at 2, 3.) Defendant argues that Plaintiffs impermissibly rely on hearsay documents, including Israeli military court convictions and video wills. (Motion at 3.) Additionally, Defendant maintains that Plaintiffs' § 2339C claims must be dismissed because § 2339C cannot apply retroactively. (Motion at 22-23.)

### IV. Shaked's Testimony

Defendant argues that the testimony of Plaintiffs' expert, Ronni Shaked, supporting Plaintiffs' contention that Hamas is responsible for the Reinstated Attacks should be excluded because it is based on the same methodology that the Court ruled inadmissible in its 2013 Decision.

In its 2013 Decision, the Court excluded certain portions of Shaked's testimony under *United States v. Mejia* because the testimony did not require expert knowledge. In *Mejia*, the Second Circuit held that testimony by a government expert that the "unspecified deaths of eighteen to twenty-three persons have been homicides committed by members of" a certain gang was outside the scope of appropriate expert testimony pursuant to Federal Rule of Evidence 702,

3

because it repeated evidence that was understandable to a layperson. 545 F. 3d 179, 195-96 (2d Cir. 2008). However, the court held that the expert could testify about how evidence admitted through a lay witness connected the murders to the gang. *Id.* at 195. For example, the expert could provide an "explanation of how the graffiti near a body indicated that the murderer was a member of [the gang]," or "testimony that the gang used a particular method to kill enemies and that as a result of his review of the autopsy reports (which would have been in evidence before the jury), he had concluded that [the gang] committed those murders." *Id.*

In its 2013 Decision, the Court found that significant portions of Shaked's proposed testimony appeared to summarize factual, non-technical materials, including postings on websites and video wills. *Strauss v. Credit Lyonnais, S.A.,* 925 F. Supp.2d 414, 444 (E.D.N.Y. 2013). Defendant asserts that Shaked's proposed testimony on the Reinstated Attacks is similarly problematic. As the Court ruled in its 2013 Decision, Shaked can put factual evidence into context to help Plaintiffs establish that Hamas is responsible for an attack, but his testimony cannot be used to establish basic facts in the first place. *Id.* at 445.

### V. Alshech's Testimony

Defendant urges this Court to exclude Eli Alshech's testimony because he is unqualified; his methodology is unreliable; and he aggregates inadmissible materials.

As with Shaked in its 2013 Decision, the Court finds that Alshech is qualified as a terrorism expert and his methodology is sufficiently reliable. Among other things, Alshech is a private consultant to the Israel Security Agency and he served as director of the Jihad and Terrorist Studies Project at the Middle East Media Research Institute, where he led a project team that monitored jihadi internet platforms, including those of Hamas. (Opposition at 18.) Before that, Alshech

4

worked at the Israeli Ministry of Defense, making determinations regarding the parties responsible for hundreds of terrorist attacks. (*Id.*)

Defendant spends several paragraphs emphasizing the similar methodologies of Evan Kohlmann and Alshech. (Motion at 11-13.) For similar reasons as to why this Court found Kohlmann's methodology reliable in 2013, this Court now finds Alshech's methodology reliable. *See Kumho Tire Co., Ltd.*, 526 U.S. at 151, 119 S.Ct. 1167 ("It might not be surprising in a particular case, for example, that a claim made by a scientific witness has never been the subject of peer review, for the particular application at issue may never previously have interested any scientist."). Alshech relies upon methods that an expert in his field normally would use. Alshech's experience, analytic techniques, and report and testimony meet *Daubert's* and Rule 702's requirements. *See Gill v. Arab Bank, PLC,* 893 F. Supp.2d 523, 532 (E.D.N.Y. 2012) (admitting expert testimony from Dr. Alshech.). Accordingly, Alshech's expert testimony is admissible.

### VI. Fact Witnesses

The Court agrees with Defendant that Plaintiffs rely on the testimony of fact witnesses (Dr. Micha Shamir, Howard M. Green, Inbal Rose, Hannanel Touito, Shalom Sabag, and Temima Spetner-Gould) who lack personal knowledge yet draw conclusions on whether Hamas committed each attack. (Motion at 17.) Each of these witnesses conceded that s/he lacked personal knowledge of the particular attack about which s/he planned to testify, and some of the witnesses derived their knowledge of the attacks from media sources only. (*Id.*) Because Plaintiffs do not oppose this assertion, the Court need not discuss the issue further, and the testimony is ruled inadmissible.

## VII. Israeli Military Court Convictions, Video Wills, and Other Documents

Renewing the argument it made in its previous summary judgment motion and its motion for reconsideration, Defendant again asserts that the military court convictions on which Plaintiffs rely are inadmissible hearsay. Once again, the Court disagrees.

As this Court found twice already, both in the 2013 Decision and the Opinion granting in part and denying in part Defendant's motion for reconsideration, Israeli military courts comport with minimum due process standards. Israeli military trials typically are open to the public; defendants are entitled to representation by an attorney; the same rules of evidence used in Israeli civilian courts apply; defendants are entitled to challenge confessions on the grounds of coercion; witnesses are subject to cross-examination; defendants enjoy the privilege against self-incrimination; and, if defendants enter a guilty plea, the judge must explain the consequences of the plea to the defendant before accepting the plea. *Strauss*, 925 F. Supp. 2d at 448. Any criticisms of the due process afforded defendants in Israeli military courts and their ability to come to a reliable verdict affects the weight of the evidence, not admissibility, particularly where it appears on this record that the accused were afforded more than a modicum of due process. *Id.*

However, the Court does agree with Defendant that the following hearsay documents, standing alone, are inadmissible to prove Hamas' responsibility for the Reinstated Attacks: (1) newspaper articles; (2) claims of responsibility posted on a Hamas-affiliated websites; and (3) video wills. *See Delrosario v. City of New York,* 2010 WL 882990, at *7 (S.D.N.Y. Mar. 4, 2010) ("Newspaper articles are hearsay when introduced to prove the truth of the matter asserted, and also must not be admitted."); *Ladner v. City of New York,* 20 F. Supp.2d 509, 519 (E.D.N.Y.1998) (finding newspaper articles "inadmissible hearsay and unusable to defeat summary judgment"), *aff'd*, 181 F.3d 83 (2d Cir. 1999) (unpublished table decision); *Gill v. Arab Bank, PLC,* 893 F.

6

Supp.2d 523, 532 (E.D.N.Y. 2012) (finding that terrorist claims of responsibility are not exceptions to hearsay as statements against interest because terrorists believe taking credit for an attack is a benefit, not a detriment).

Defendant next seeks to exclude the 2005 ISA Report. Defendant acknowledges that, in the 2013 Decision, the Court held that an official report of the ISA was admissible under the public records exception to prove that Hamas committed one of the attacks, as stated in Federal Rule of Evidence 803(8), and self-authenticating under Federal Rule of Evidence 902(3). (Motion at 19.) However, Defendant distinguishes the ISA report that the court ruled admissible in 2013 from the 2005 ISA Report. (*Id.*) Defendant asserts that the 2005 ISA Report does not bear any insignia of the ISA and it is not trustworthy because Shaked received it in his capacity as a journalist from the ISA's communications department. (*Id.* at 20.) Defendant highlights a footnote from the 2013 Decision, in which the Court cited *Gill v. Arab Bank, PLC*, 893 F. Supp.2d 542 (E.D.N.Y. Nov. 6, 2012) ("*Gill III*"). In *Gill III*, the Honorable Jack B. Weinstein, Senior U.S. District Judge of this Court, held that an ISA report linking a militant cell that purportedly carried out the terrorist attack to Hamas was inadmissible because the report's conclusion was unreliable: the relevant conclusion was supported only by a confession repeating second-hand information of uncertain provenance, and there was "no evidence independent of the confession that served as a basis of the ISA reports' indication" that the terrorist cell at issue was Hamas' agent. *Id*. at 571.

Defendant's argument is untimely. In its 2013 Decision, the Court ruled that the 2005 ISA Report was admissible, and Defendant did not move to reconsider that decision. *See Strauss*, 925 F. Supp.2d at 448-49 ("the ISA's yearly public report on terrorist attacks concluded that Hamas was responsible for carrying out the April 30 Attack. These documents can be self-authenticated as foreign public documents.") (citing the 2005 ISA Report). Regardless, Defendant's argument

7

is misplaced. Plaintiffs here rely on the *2007* ISA Report, not the 2005 ISA Report. The 2007 ISA Report bears the official insignia of the ISA and Plaintiffs represent that its contents are based on ISA investigations. (Schlanger Declaration ¶ 3; Ex. 25.) The Honorable Brian M. Cogan, U.S. District Judge of this Court, ruled the 2007 ISA Report admissible in *Linde v. Arab Bank*, No. 4-cv-2799 (BMC) (VVP). *See Arab Bank* Trial Transcript, August 25, 2015 at 947:3-9. ("Next Plaintiffs' Exhibit 3811. That's the ISA report on suicide bombers through 2007. This seems to me to be a plainly admissible government report of the factual findings of an ISA investigation. Assuming authentication, it will be admissible.") This Court similarly finds that the 2007 ISA Report is admissible and not hearsay.

**VIII. Admissible Evidence Establishing Causation for Each Attack**

There is sufficient admissible evidence for a jury to conclude that Hamas was responsible for the Reinstated Attacks. For example, a reasonable jury could conclude that Hamas is responsible for:

(1) the March 28, 2001 Neve Yamin Suicide Bombing based upon the 2007 ISA Report's conclusion that Hamas operatives committed the attack;

(2) the August 9, 2001 Jerusalem Sbarro Pizzeria Suicide Bombing based upon the 2007 ISA Report's finding that this attack "was planned and directed by the Hamas network" and the Israeli military court convictions of Hamas operatives for their role in orchestrating the attack;

(3) the December 1, 2001 Ben Yehuda Street Suicide Bombing based upon the 2007 ISA Report's determination that one of the suicide bombers was a Hamas member and the other was a Hamas recruit, and an Israeli military court conviction of the manufacturer of the explosive device used; and

8

(4) the June 18, 2002 suicide bombing on Bus 32-A in Jerusalem based upon the 2007 ISA Report's conclusion that Hamas located, recruited, and trained the suicide bomber and its findings of the extensive involvement of Hamas operatives, as well as the Israel military court convictions of Hamas operatives for their roles in perpetrating the attack. (Opposition at 2-6; 8-9.)

To establish that Hamas committed the March 7, 2002 Atzmona attack ("Atzmona Attack"), Plaintiffs rely on the video of Muhammad Farhat ("Farhat Video"), made on March 7, 2002, before commission of the attack; Shaked's testimony that, in the Farhat Video, Farhat stands in front of a background that contains recognizable Hamas symbols; website postings in which Hamas claims responsibility for the attack; and photos published on the official Hamas website showing Farhat wearing a hat with Hamas symbols. (*Id.* at 7-8, 15.) Plaintiffs distinguish the Farhat Video, announcing the plan for the Atzmona attack, from the video wills that this Court ruled inadmissible in its 2013 Decision.

Notwithstanding the Court's prior ruling in the 2013 Decision, not all website postings necessarily are hearsay. Here, the Court concludes that the Farhat Video is distinguishable. Terrorists may believe they will benefit by taking credit for an attack, making such statements unreliable. However, unlike the videos excluded in the 2013 Decision, here the person in the video is identified; a time frame for its creation can be established; the Farhat video announces the attack, the details of which later were verified; and Plaintiffs' experts can authenticate the video.

The video further is admissible under the hearsay exception for statements "of the declarant's then-existing state of mind (such as motive, intent, or plan)." *See* Fed. R. Evid. 803(3). *See also U.S. v. Best*, 219 F. 3d 192, 198 (2d Cir. 2000) ("A declarant's out-of-court statement as to his intent to perform a certain act in the future is not excludable on hearsay grounds."); *Shelden*

9

*v. Barre Belt Granite Emp'r Union Pension Fund,* 25 F. 3d 74, 79 (2d Cir. 1994) ("[U]nder a long established exception to the hearsay rule, the existence of the plan or intention [to do a given act] may be proven by evidence of 'the person's own statements as to its existence.'") (quoting 6 J. Wigmore, *Evidence* § 175 at 129). The Farhat Video will be admitted, subject to authentication and proof of its reliability at a hearing to be held prior to trial.

**IX.   § 2339C Claims**

Defendant argues that the third claim of relief in *Strauss* and *Wolf* should be dismissed because § 2339C was enacted after the Reinstated Attacks and cannot be applied retroactively. (Motion at 22-23.) Plaintiffs fail to address this argument. The Court agrees with Defendant.

Public Law 107-197 provided that all parts of § 2339C would take effect between June and July 2002. Pub. L. 107-197, Title II, § 203, June 25, 2002, 116 Stat. 727. "Statutes are disfavored as retroactive when their application would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Fernandez-Vargas v. Gonzales,* 548 U.S. 30, 37 (2006). "It has become a rule of general application that a statute shall not be given retroactive effect unless such construction is required by explicit language or by necessary implication." *Id.*

Congress has not explicitly made § 2339C retroactive, nor is a retroactive construction necessary. Thus, to the extent that Plaintiffs' claims are predicated on conduct by Defendant that allegedly violated § 2339C, those claims are dismissed. *See Owens v. BNP Paribas S.A.,* 2017 WL 394483, at *9 (D.D.C. Jan. 27, 2017) ("[T]o the extent that plaintiffs raise a claim for primary liability based on an underlying violation of § 2339C, this claim is also dismissed, as the enactment of § 2339C in 2002 post-dates the relevant conduct here leading up to the 1998 embassy bombings."). *See also Boim v. Holy Land Found. for Relief & Dev.,* 549 F.3d 685, 691 (7th Cir.

2008) (holding that, to state a § 2333 claim predicated on a violation of § 2339A, the defendant must have provided material support "between the effective date of section 2339A and [Plaintiff's] killing.").

## **CONCLUSION**

For the foregoing reasons, Defendant's motion is denied to the extent that: (1) Shaked may testify to put factual evidence already admitted into context to establish Hamas' responsibility for an attack, but not to establish the basic facts in the first instance; (2) Alshech's expert testimony is admissible; (3) Israeli military court conviction records are admissible; (4) the 2005 and 2007 ISA Reports are admissible; (5) there is sufficient admissible evidence for a reasonable jury to conclude that Hamas is responsible for the Reinstated Attacks; and (6) the Farhat video is admissible subject to a finding of authenticity and reliability at a hearing. Defendants' motion is granted to the extent that: (1) the testimony of Plaintiffs' fact witnesses is not admissible; (2) hearsay documents such as newspaper reports, claims of responsibility on Hamas-sponsored websites, and video wills, generally, are not admissible; and (3) Plaintiffs' § 2339C claims are dismissed. Plaintiffs' remaining claims pertaining to the Reinstated Attacks may proceed.

SO ORDERED.

Dated: Brooklyn, New York
       September 30, 2017

                                      /s/
                              DORA L. IRIZARRY
                                 Chief Judge