UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MOSES STRAUSS, et al.,                    :
                                          :
                    Plaintiffs,           :    Case No. 06-CV-702 (DLI) (RML)
                                          :
        - against -                       :
                                          :
CRÉDIT LYONNAIS, S.A.,                    :
                                          :
                    Defendant.            :
                                          :
---------------------------------------------------------------X
BERNICE WOLF, et al.,                     :
                                          :
                    Plaintiffs,           :
                                          :
        - against -                       :
                                          :    Case No. 07-CV-914 (DLI) (RML)
CRÉDIT LYONNAIS, S.A.,                    :
                                          :
                    Defendant.            :    **Oral Argument Requested**
                                          :
---------------------------------------------------------------X

## REPLY MEMORANDUM OF LAW OF DEFENDANT CRÉDIT LYONNAIS, S.A. IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant Crédit Lyonnais, S.A.

May 23, 2018

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

I.  THE COURT SHOULD GRANT CL SUMMARY JUDGMENT ...................................... 2

    A.  After *Linde*, Plaintiffs Must Present Admissible Evidence Connecting CL To Hamas's Violent Activities And That CL Acted With Apparent Terroristic Intent ........................................................................................... 2

    B.  There Is No Triable Issue As To Whether CL Committed An "Act Of International Terrorism" .................................................................................. 5

II. PLAINTIFFS HAVE NOT PLEADED AN AIDING AND ABETTING CLAIM AND, EVEN IF THEY HAD, CL WOULD BE ENTITLED TO SUMMARY JUDGMENT ........................................................................................ 8

    A.  Plaintiffs' Attempt To Add A New Aiding And Abetting Claim Fails .................... 8

    B.  No Reasonable Juror Could Find CL Liable For Aiding And Abetting .................. 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,
§ 301(a)(7), 110 Stat. 1214, 1247 (1996) ............................................................................ 4

18 U.S.C. § 2331(1) ........................................................................................................ 1, 3, 4

18 U.S.C. § 2333(a) ............................................................................................................. 1

18 U.S.C. § 2339B .......................................................................................................... passim

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................................................................ 7

*Bieluch v. Sullivan*,
999 F.2d 666 (2d Cir. 1993) ................................................................................................ 4

*Bryant v. S. Country Cent. Sch. Dist.*,
No. 2:14-cv-5621 (DRH)(ARL), 2017 WL 1216553 (E.D.N.Y. Mar. 31, 2017) ............ 9-10

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ................................................................................... 8, 9, 10

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ................................................................................................................ 4

*In re Terrorist Attacks on September 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................................................................................. 9

*Johnson v. Nextel Commc'ns, Inc.*,
660 F.3d 131 (2d Cir. 2011) ................................................................................................ 9

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) ......................................................................................... passim

*Linde v. Arab Bank, PLC*,
97 F. Supp. 3d 287 (E.D.N.Y. 2015) ................................................................................... 3

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132,
§ 301(a)(7), 110 Stat. 1214, 1247 (1996) ............................................................................ 4

18 U.S.C. § 2331(1) ........................................................................................................ 1, 3, 4

18 U.S.C. § 2333(a) ............................................................................................................. 1

18 U.S.C. § 2339B .......................................................................................................... passim

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.3d 256 (2d Cir. 2002) ................................................................................................ 7

*Bieluch v. Sullivan*,
999 F.2d 666 (2d Cir. 1993) ................................................................................................ 4

*Bryant v. S. Country Cent. Sch. Dist.*,
No. 2:14-cv-5621 (DRH)(ARL), 2017 WL 1216553 (E.D.N.Y. Mar. 31, 2017) ............ 9-10

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ................................................................................... 8, 9, 10

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ................................................................................................................ 4

*In re Terrorist Attacks on September 11, 2001*,
349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................................................................................. 9

*Johnson v. Nextel Commc'ns, Inc.*,
660 F.3d 131 (2d Cir. 2011) ................................................................................................ 9

*Linde v. Arab Bank, PLC*,
882 F.3d 314 (2d Cir. 2018) ......................................................................................... passim

*Linde v. Arab Bank, PLC*,
97 F. Supp. 3d 287 (E.D.N.Y. 2015) ................................................................................... 3

|  | **Page(s)** |
|---|---|
| *Missigman v. USI Ne., Inc.*,<br>131 F. Supp. 2d 495 (S.D.N.Y. 2001) | 9 |
| *Steed Fin. LDC v. Nomura Sec. Int'l Inc.*,<br>148 F. App'x 66 (2d Cir. 2005) | 10 |
| *Strauss v. Credit Lyonnais, S.A.*,<br>No. CV-06-0702 (CPS), 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006) | 9 |
| *Ungar v. Islamic Republic of Iran*,<br>211 F. Supp. 2d 91 (D.D.C. 2002) | 10 |
| *Weiss v. Nat'l Westminster Bank PLC*,<br>768 F.3d 202 (2d Cir. 2014) | 4 |

# **INTRODUCTION**[1]

In *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018), the Second Circuit held that a bank's knowing provision of material support for an FTO in violation of 18 U.S.C. § 2339B is insufficient to prove that the bank engaged in an "act of international terrorism" for purposes of the type of civil claim plaintiffs are making here under the ATA, *id.* §§ 2333(a), 2331(1). Instead, as Crédit Lyonnais ("CL") has shown, *Linde* requires plaintiffs to separately prove that the bank's conduct *also* (a) involved violence or danger to human life *and* (b) was apparently intended to intimidate or coerce the Israeli civilian population or government. 882 F.3d at 326. Plaintiffs' opposition brief struggles mightily to avoid *Linde*'s holding and relies on inadmissible and irrelevant evidence in a strained attempt to satisfy *Linde*'s requirements. But plaintiffs have no admissible evidence on which a reasonable juror could find for them on either prong. That plaintiffs do not even purport to cite any such evidence in their brief speaks volumes as to why CL is entitled to summary judgment.

Plaintiffs' attempt to avoid summary judgment by relying on a dismissed aiding and abetting claim does not change this result. First, JASTA's enactment did not change the legal underpinnings of Judge Sifton's 2006 dismissal of that claim. Plaintiffs' argument that they can present an equivalent claim 12 years later without a new pleading, based on a one-sentence description they unilaterally inserted in the Joint Pre-Trial Order, attempts an improper end-run around both the law-of-the-case doctrine and Rule 15. Second, even if plaintiffs had properly pled an aiding and abetting claim, there still would be no a triable issue because the evidence does not allow a reasonable juror to find either that CL was aware of its purported role in Hamas's violent or dangerous activities, or that CL substantially assisted Hamas in carrying out

---

[1] All capitalized terms not otherwise defined in this reply have the meaning given to them in the Mem. of Law of Def. Crédit Lyonnais, S.A. in Supp. of its Mot. for Summ. J., dated April 11, 2018 ("CL Br."). Plaintiffs' Mem. of Law in Opp. to Defs' Mot. for Summ. J., dated May 8, 2018, is cited as "Pl. Br."

the attacks, both of which *Linde* requires. Plaintiffs do not even purport to cite evidence to the contrary.

I. THE COURT SHOULD GRANT CL SUMMARY JUDGMENT

    A. After *Linde*, Plaintiffs Must Present Admissible Evidence Connecting CL To Hamas's Violent Activities And That CL Acted With Apparent Terroristic Intent

*1. To present a triable issue on the "international terrorism" element, plaintiffs cannot merely rely on a violation of § 2339B.* Plaintiffs concede that *Linde* rejected their theory that a bank's knowing provision of financial services to an FTO in violation of § 2339B necessarily constitutes an "act of international terrorism." Pl. Br. 2. In the same breath, however, plaintiffs argue that, under *Linde*, "whether knowingly providing banking services for a notorious terrorist group" (in other words, a violation of § 2339B) also satisfies the "international terrorism" element *always* is "a question for the jury." *Id.* at 2, 3. In other words, plaintiffs argue that § 2339B and the "international terrorism" element are *coextensive*—so that a genuine dispute as to one necessarily creates a genuine dispute as to the other. *Linde* held precisely the opposite. *See* 882 F.3d at 326 ("[I]t was incorrect to instruct the jury that a finding that Arab Bank provided material support to Hamas in violation of § 2339(B) was alone sufficient to prove the bank's own commission of an act of international terrorism under § 2333(a)."). It explicitly requires plaintiffs to prove *more* than knowledge by CL that it was providing financial services to Hamas in violation of § 2339B. *See id.* ("providing financial services to a known terrorist organization" does not, without more, "involve violence or endanger life" or "manifest the apparent intent required by § 2331(1)(B)").

Plaintiffs' argument that they can satisfy the "act of international terrorism" element based solely on evidence that CL knowingly processed wire transfers to charities controlled by Hamas, Pl. Br. 10, ignores *Linde*'s result: *Linde vacated* the jury verdict against Arab Bank

2

because the Court of Appeals concluded that evidence concerning transfers to or for the same charities, including evidence of the bank's knowledge of the charities' connections to Hamas, was insufficient to sustain the verdict *as a matter of law*. 882 F.3d at 327.[2] If the Court had deemed those facts sufficient to support ATA liability, it would have found the district court's failure to instruct on the violence and apparent terroristic intent prongs to be harmless and affirmed. *See id.* at 328.[3]

2. *The violence or dangerousness prong.* *Linde* requires that, in order to present a triable issue that CL's conduct "involve[d] violent acts or acts dangerous to human life," 18 U.S.C. § 2331(1)(A), plaintiffs must present evidence that CL's financial "services themselves" were closely connected to Hamas's violent or dangerous activities, *see* CL Br. 6; *Linde*, 882 F.3d at 328. In *Linde*, unlike here, there was evidence from which a jury could have so found, including records showing that Arab Bank provided banking services for "known Hamas leaders and operatives," and processed wire transfers that "were explicitly identified as payments for suicide bombings." *See* CL Br. 18-19; *Linde*, 882 F.3d at 321, 330; *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 304 (E.D.N.Y. 2015). Plaintiffs' argument that *Linde* did not "enunciate" that these particular facts are "criteria" that must be met in all cases, Pl. Br. 9, is a straw man. *Linde* held that there must be *some* evidence tying the defendant's conduct itself to *violent or*

---

[2] *See Linde*, 882 F.3d at 329 ("From the charge given and the verdict returned, we can also assume that the jury found Arab Bank to have provided material support in the form of financial services to what it knew was a designated terrorist organization."); *id.* at 330 (noting jury also necessarily found "Arab Bank's provision of financial services to Hamas was a 'substantial and identifiable cause of the injury that plaintiffs claim'"); *id.* at 321 (noting evidence of Arab Bank's financial services included its processing transfers "totaling approximately $32,000,000" on behalf of Hamas charities).

[3] The Court of Appeals did not *reverse* and instruct the district court to enter judgment for Arab Bank, because there was additional evidence in that case on which a properly instructed jury *could* find that Arab Bank's conduct satisfied the violence and apparent terroristic intent prongs. *Id.* at 327. As plaintiffs do not dispute, there is no such evidence in this case. CL Br. 19-20.

3

*dangerous acts*, and not just to a terrorist *organization*, which is all that plaintiffs have presented here. *See* 882 F.3d at 326.

Plaintiffs also argue that the word "involve" in § 2331(1)(A) incorporates the fungibility principle that this Court and others relied on pre-*Linde* to rule that FTOs "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." Pl. Br. 8-9. But this fungibility principle applies to § 2339B, *not* to the violence prong of § 2331(1). *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 301(a)(7), 110 Stat. 1214, 1247 (1996), note following 18 U.S.C. § 2339B; *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) (construing § 2339B). *Linde* specifically rejected plaintiffs' reliance on § 2339B's fungibility principle to show that providing financial services to a terrorist organization involves violence or danger to life for purposes of § 2331(1). *See* 882 F.3d at 326. Otherwise, a violation of § 2339B would suffice to support a civil claim.

*3. Evidence required to satisfy the terroristic intent prong.* In order to avoid summary judgment, plaintiffs *also* must present evidence that CL's conduct "appear[s] to [have been] intended to intimidate or coerce [the Israeli] civilian population" or government. *See id.* at 327; CL Br. 7-9. Plaintiffs attempt to elide this requirement, first by arguing that it is an objective one, and so CL's "subjective state of mind" is irrelevant, Pl. Br. 11-12,[4] and, second, just the opposite, that this prong is satisfied by evidence that CL *subjectively knew* it was providing financial services to charities that were controlled by Hamas, *id.* at 12-13. Both arguments are wrong. Under *Linde*, this prong requires plaintiffs to prove that an objective observer would

---

[4] Plaintiffs rely on dicta in *Weiss v. National Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014), that this prong "does not depend on the actor's beliefs." That does not mean that evidence of CL's subjective state of mind is irrelevant. It is common for "objective" standards to turn, in part, on the defendant's subjective state of mind. *See, e.g., Bieluch v. Sullivan*, 999 F.2d 666, 672 (2d Cir. 1993) ("Although the qualified immunity defense turns on an objective test, rather than [defendant]'s subjective intent, this does not bar an examination of the facts known to [defendant] at the time.").

4

conclude that CL's intent in acting as it did was to intimidate or coerce the Israeli civilian population or government. While some acts may unambiguously demonstrate the requisite intent—for example, any reasonable observer would conclude that perpetrating a suicide bombing evinces such intent, without inquiring into the suicide bomber's subjective state of mind—that is not true of the banking services that CL provided to CBSP. *See Linde*, 882 F.3d at 326. Therefore, plaintiffs cannot sustain their burden of proof on this prong without presenting evidence of CL's subjective state of mind that an objective observer would deem to exhibit such intent.[5] But plaintiffs have cited no such evidence. In *Linde*, evidence that knowingly processed payments that were explicitly identified as being for suicide bombings, and that the bank endorsed Hamas's terrorism, sufficed to create a triable issue on this prong. *See* CL Br. 18-19. The fact that Arab Bank knowingly provided financial services to Hamas—which is all that plaintiffs could possibly prove about CL—did not.

### B. There Is No Triable Issue As To Whether CL Committed An "Act Of International Terrorism"

*1. There is no admissible evidence to satisfy the violence or dangerousness prong.* CL's conduct consisted only of making wire transfers on behalf of its charity customer CBSP to other charities for expressly non-violent purposes. *See* CL Br. 9-11; CL Supp. 56.1 Stmt. ¶¶ 6-7. Moreover, plaintiffs and their experts have explicitly conceded there is no evidence that CL's wire transfers were connected to any violent or dangerous acts, much less that CL knowingly participated in any attacks. *See* CL Br. 11-13. Plaintiffs devote pages of their opposition brief to wrestling unsuccessfully with *Linde*'s straightforward holding that the phrase "involve violent acts or acts dangerous to human life" means what it says, but they conspicuously devote little

---

[5] Plaintiffs themselves demonstrate this point by arguing repeatedly that CL's banking services were not "routine" because CL purportedly knew it was providing material support to Hamas. *See, e.g.*, Pl. Br. 6-7.

5

more than a page to describing the evidence that they rely on as creating a triable issue on that prong. *See* Pl. Br. 10-11. That evidence is insufficient as a matter of law.

First, that evidence would, at most, demonstrate that the conduct of *other* entities and persons involved violence or danger to life, contrary to *Linde*'s requirement that plaintiffs prove *the defendant's* financial "services themselves" satisfy this prong. 882 F.3d at 328. For example, plaintiffs point to evidence, Pl. Br. 10-11, that *the 13 Charities*: (a) were "instrumental in organizing and distributing payments to families of suicide bombers and other terrorists," relying on testimony from the *Arab Bank* case that is inadmissible here, and ignoring their own experts' concessions that they are aware of no evidence that connects these charities to the attacks at issue, *see* CL Br. 12-13; (b) "recruited Hamas operatives to commit terrorist attacks," ignoring their experts' concession that they have no such evidence with respect to the attacks at issue, *see id.*; (c) were controlled by leaders of Hamas, ignoring that their own experts conceded to the contrary, *see* Pls.' Resp. to CL 2011 56.1 Stmt. ¶¶ 317-318, 343-345, 439; and (d) were "integral to Hamas's structure and operational capacity," a statement for which plaintiffs provide no support. Critically, plaintiffs do not, nor could they contend that *any* of this evidence relates to the wire transfers processed by CL, or was known to CL at the time.

The only evidence cited by plaintiffs that is remotely connected to CL's conduct is OFAC's statement in support of its designation of CBSP as an SDGT that OFAC had "credible evidence" that CBSP was "Hamas's primary fundraiser in France" which "collected large amounts of money . . . which it then transfer[red] to sub-organizations of Hamas." Pl. Br. 10; Schlanger Decl. Ex. 2 at 5. But even if OFAC's statement were true, it would show no more than CL's violation of § 2339B by providing support to an FTO, as this Court has previously ruled. Nothing in OFAC's designation states that CBSP had any involvement with—let alone

6

that the banking services CL provided to CBSP involved—Hamas's terrorist activities, and a contrary view would necessarily depend on the fungibility principle that *Linde* rejected. Moreover, OFAC's designation is inadmissible, among other reasons because it was not made and known to CL until more than one year *after* the last wire transfer processed by CL to one of the 13 Charities (none of which was listed by OFAC at that time), the conduct that plaintiffs claim to have caused their injuries.[6] Thus, it cannot defeat summary judgment. *See Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 270-71 (2d Cir. 2002).

    *2. There is no admissible evidence to satisfy the apparent terroristic intent prong.* CL has shown that no reasonable juror could find that CL's provision of financial services to CBSP exhibited the requisite apparent terroristic intent. The undisputed evidence is that CL did not share—and was fiercely opposed to—Hamas's goals of intimidating or coercing the Israeli civilian population or government. CL Br. 13-16. Plaintiffs' argument that it is "law of the case" that a jury could find that CL "knowingly provided material support to Hamas," Pl. Br. 12, is a red herring. At most, that could establish only a violation of § 2339B, which, under *Linde*, does not present a triable issue on the apparent terroristic intent requirement.

    Lacking any evidence of CL's apparent terroristic intent, plaintiffs rely heavily on irrelevant and inadmissible settlement agreements that CL's affiliates—not CL itself—entered into with U.S. authorities concerning violations of U.S. sanctions against Sudan, Cuba, Burma and Iran. Pl. Br. 1, 13-14.[7] Those settlements have nothing to do with this case. They do not concern the banking services that CL provided to CBSP, they do not concern any violations of the ATA or any terror financing, CL's affiliates did not admit to financing any terrorists, and the transactions at issue occurred no earlier than August 2003, 18 months after the last of the

---

[6] *See* CL's Proposed Mot. in Lim. #A.3, Joint Pre-Trial Order ("JPTO") at 41, *Strauss* ECF No. 458 (Mar. 8, 2018).
[7] *See* CL's Proposed Mot. in Lim. #D.6, JPTO at 55 ("CL MIL D.6").

relevant transfers that CL processed on CBSP's behalf to the 13 Charities. The settlements also are inadmissible as hearsay and under Federal Rules of Evidence 408, 410 and 404(b). *See* CL MIL D.6.

Plaintiffs' argument that these settlements show that CL "systematically disregarded U.S. sanctions," Pl. Br. 1, is thus another rhetorical red herring: it does not present a triable issue that CL's wire transfers exhibit the apparent terroristic intent to coerce the Israeli civilian population or government. Likewise, plaintiffs' unsupported speculation that relevant CL personnel were implicated in the conduct underlying these settlements, Pl. Br. 13, neither impeaches nor contradicts their testimony in *this* case, to which the settlements are irrelevant.

## II. PLAINTIFFS HAVE NOT PLEADED AN AIDING AND ABETTING CLAIM AND, EVEN IF THEY HAD, CL WOULD BE ENTITLED TO SUMMARY JUDGMENT

### A. Plaintiffs' Attempt To Add A New Aiding And Abetting Claim Fails

Plaintiffs disclaim reliance on the only aiding and abetting claim they have ever pled—which Judge Sifton dismissed in 2006—and argue that JASTA constituted an intervening change in controlling law that entitles them to assert a "different" claim for "statutory" aiding and abetting. Pl. Br. 4. But Judge Sifton expressly assumed the availability of the type of secondary liability claim for which JASTA provides, and he dismissed the claim on the merits for failure to plead the substantial assistance element that JASTA reaffirms. *See* CL Br. 21.[8] Unlike in *Linde*, JASTA therefore provides no reason to disturb the law of the case here.

Recognizing this, plaintiffs argue that the prefatory text of JASTA, which states that *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), provides the "proper legal framework" for secondary liability, constitutes an intervening change in controlling law. Pl. Br. 18. But the

---

[8] By contrast, *Linde* held that JASTA constituted an intervening change in controlling law because the claim in that case had been dismissed on the ground that there is no aiding and abetting liability under the ATA. *See* 882 F.3d at 320; Pl. Br. 16.

8

*Halberstam* "framework" is materially identical to the New York common law that Judge Sifton applied.[9] JASTA's reference to *Halberstam* did not change the substantive aiding and abetting standard that plaintiffs failed to meet.

Plaintiffs' argument that discovery revealed evidence unavailable to Judge Sifton when he dismissed this claim, Pl. Br. 4, also fails. Judge Sifton assumed all of plaintiffs' allegations to be true—including that CL knew it was providing material support to charities controlled by Hamas, which is the most plaintiffs claim they can prove *after* discovery. In any event, the claim remains dismissed, and plaintiffs' short description of such a claim in the JPTO, over CL's objection and without the Court's consent, does not resurrect it. *Id.* 4, 15 & n.16.[10]

### B. No Reasonable Juror Could Find CL Liable For Aiding And Abetting

Even if an aiding and abetting claim remained in this case, CL would be entitled to summary judgment because no reasonable juror could find for plaintiffs on *either* of the general awareness or substantial assistance elements. *First*, under *Linde*, plaintiffs must prove that CL was "generally aware" that it was "playing a 'role'" in Hamas's *violent or life-endangering activities*," not merely that it was providing support to Hamas. 882 F.3d at 329 (emphasis added).[11] The Second Circuit found that evidence that Arab Bank knew it was transferring

---

[9] *Halberstam* simply adopted the Restatement (Second) of Torts § 876(b) (1979) (the "Restatement"), *see Halberstam*, 705 F.2d at 477-78, as have New York courts, *see Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011), including Judge Sifton in these cases, *Strauss v. Credit Lyonnais, S.A.*, No. CV-06-0702 (CPS), 2006 WL 2862704, at *9 (E.D.N.Y. Oct. 5, 2006). The ATA aiding and abetting precedent on which Judge Sifton relied, *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005), *did* in fact evaluate the aiding and abetting claims under the *Halberstam* framework, *id.* at 798-800. The fact that Judge Sifton did not list the factors does not mean he did not consider them. To the extent plaintiffs argue that Judge Sifton applied those factors incorrectly, they cannot seek reconsideration 12 years later.

[10] *See Missigman v. USI Ne., Inc.*, 131 F. Supp. 2d 495, 517-18 (S.D.N.Y. 2001) ("Courts routinely refuse to allow parties to raise additional claims . . . in the pretrial order after the completion of discovery.").

[11] This standard does not require proof of CL's knowledge of "the specific attacks at issue," but it *does* require proof that CL knew it was "assuming a 'role'" in Hamas's violent "terrorist activities," *i.e.*, that it was playing a role in Hamas's terrorist attacks generally. *Id.* Contrary to plaintiffs' argument that *scienter* may not be resolved on summary judgment, rulings resolving *scienter* disputes on summary judgment where no reasonable juror could find for the non-moving party are legion. *See, e.g., Bryant v. S. Country Cent. Sch. Dist.*, No. 2:14-cv-5621

"payments for suicide bombings" raised an issue of fact on this element, *id.* at 330, but plaintiffs have no similar evidence here, *see* CL Br. 13-16; *supra* at 4-5, 7-8.  Plaintiffs do not dispute this as a factual matter, but instead seek to elide *Linde*'s holding by arguing, in reliance on *Halberstam*, and the Second Circuit's discussion of § 2339B in *Weiss* (which had nothing to do with aiding and abetting), that the general awareness element is satisfied if CL was generally aware of its role in CBSP's soliciting of funds for Hamas-controlled charities.  *See* Pl. Br. 5, 24.  *Linde* expressly rejected this argument.  882 F.3d at 329-30.

*Second*, plaintiffs also cannot show that CL substantially assisted Hamas in perpetrating terrorist attacks.  Plaintiffs' strained attempt to analogize this case to *Halberstam*, a case involving a two-person burglary enterprise in which the defendant was both the girlfriend and "willing partner" of the primary wrongdoer, 705 F.2d at 486, fails.  *See Ungar v. Islamic Republic of Iran*, 211 F. Supp. 2d 91, 99 (D.D.C. 2002) (distinguishing *Halberstam*).  Further, plaintiffs' attempt to contort the *Halberstam* factors in their favor by focusing on CL's relationship with *CBSP* rather than CL's non-existent relationship with *Hamas*, *see* Pl. Br. 20-22, ignores that this claim requires plaintiffs to prove that CL "knowingly and substantially assist[ed] *the principal violation*," *Linde*, 882 F.3d at 329 (emphasis added)—here, the terrorist attacks allegedly were perpetrated *by Hamas*.

## CONCLUSION

The Court should grant CL's motion for summary judgment.

---

(DRH)(ARL), 2017 WL 1216553, at *6 (E.D.N.Y. Mar. 31, 2017); *Steed Fin. LDC v. Nomura Sec. Int'l Inc.*, 148 F. App'x 66, 69 (2d Cir. 2005).

Dated: May 23, 2018

        Respectfully submitted,

        CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _/s/ Lawrence B. Friedman_____
        Lawrence B. Friedman
        Jonathan I. Blackman

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant Crédit Lyonnais, S.A.