UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
MOSES STRAUSS, *et al.*,                                :
                                                        :
                              Plaintiffs,               :
                                                        :          **OPINION AND ORDER**
                                                        :          06-cv-702 (DLI) (RML)
                  -against-                             :
                                                        :
                                                        :
CRÉDIT LYONNAIS, S.A.,                                  :
                                                        :
                              Defendant.                :
                                                        :
-------------------------------------------------------- x
BERNICE WOLF, *et al.*,                                 :
                                                        :
                              Plaintiffs,               :
                                                        :          07-cv-914 (DLI) (RML)
                                                        :
                  -against-                             :
                                                        :
                                                        :
CRÉDIT LYONNAIS, S.A.,                                  :
                                                        :
                              Defendant.                :
                                                        :
-------------------------------------------------------- x

**DORA L. IRIZARRY, Chief United States District Judge:**

Approximately 200 individuals and estates of deceased persons (collectively, "Plaintiffs"),

brought this consolidated action against defendant Crédit Lyonnais, S.A. ("Defendant"), seeking

to recover damages from fifteen terrorist attacks in Israel and Palestine pursuant to the civil liability

provision of the Antiterrorism Act of 1992 ("ATA"), 18 U.S.C. § 2333(a) ("Section 2333(a)").

Specifically, Plaintiffs allege that Defendant is liable civilly pursuant to the ATA's treble damages

provision for: (1) aiding and abetting the murder, attempted murder, and serious physical injury of

American nationals outside the United States in violation of 18 U.S.C. § 2332; (2) knowingly

providing material support or resources to a Foreign Terrorist Organization ("FTO") in violation

of 18 U.S.C. § 2339B; and (3) willfully and unlawfully collecting and transmitting funds with the knowledge that such funds would be used for terrorist purposes in violation of 18 U.S.C. § 2339C. Defendant now brings the instant limited renewed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendant's motion for summary judgment is granted.

## BACKGROUND[1]

Plaintiffs first filed a complaint arising out of thirteen terrorist attacks in *Strauss v. Crédit Lyonnais, S.A.* [2] on February 16, 2006. *See*, Compl., *Strauss* Dkt. Entry No. 1. On October 5, 2006, the late Honorable Charles P. Sifton, then presiding, dismissed Plaintiffs' aiding and abetting claim and claims arising out of three attacks as time barred, but denied dismissal of Plaintiffs' remaining claims and granted Plaintiffs leave to amend their complaint. *See*, *Strauss I*, 2006 WL 2862704, at *19. On March 2, 2007, Plaintiffs filed a complaint in *Wolf v. Crédit Lyonnais, S.A.* *Wolf*, Dkt. Entry No. 1. In light of Judge Sifton's rulings in *Strauss I*, the parties in *Wolf* agreed to dismissal of their aiding and abetting claim. *Wolf*, Dkt. entry No. 31. On November 6, 2006, Plaintiffs filed an amended complaint in *Strauss*, realleging the claims that Judge Sifton deemed time barred in *Strauss I*. *Strauss* Dkt. Entry No. 52. On August 6, 2007, Judge Sifton again dismissed those claims as time barred. *Strauss v. Crédit Lyonnais, S.A.* ("*Strauss II*"), 2007 WL 2296832, at *9 (E.D.N.Y. Aug. 6, 2007). In light of Judge Sifton's ruling regarding the time barred claims arising out of three attacks in *Strauss II*, the parties in *Wolf* agreed to dismissal of Plaintiffs'

---

[1] The Court assumes familiarity with the facts underlying this action, which are summarized more fully in the Court's previous orders. *See, e.g.*, *Strauss v. Crédit Lyonnais, S.A.* ("*Strauss I*"), 2006 WL 2862704, at *1-6 (E.D.N.Y. Oct. 5, 2006); *See also*, *Strauss v. Crédit Lyonnais, S.A.* ("*Strauss III*"), 925 F. Supp.2d 414, 417-424 (E.D.N.Y. 2013).

[2] By order dated October 7, 2011, *Strauss* and *Wolf* formally were consolidated for the purposes of a hearing, trial, or other adjudication of liability. Citations to the "*Strauss* Docket" are to *Strauss v. Crédit Lyonnais, S.A.*, 06-CV-702. Citations to the "*Wolf* Docket" are to *Wolf v. Crédit Lyonnais, S.A.*, 07-CV-914. Where documents have been filed on both dockets, the Court cites to the *Strauss* Docket only, as the lead case.

claims arising out of the same three attacks. *Wolf*, Dkt. Entry No. 36.

On February 28, 2013, the Court granted in part and denied in part Defendant's first motion for summary judgment. *See*, *Strauss III*, 925 F. Supp.2d 414. In *Strauss III*, the Court dismissed the claims brought by Shlomo Tratner, individually and on behalf of the Estate of Tiferet Tratner, in connection with the September 24 Attack only, and allowed the claims based on the remaining fourteen attacks to proceed. *See*, *Id.* at 452-53. Additionally, the Court granted in part Café Hillel Plaintiffs' cross-motion for summary judgment to the extent that they proved Hamas' responsibility for the Café Hillel attack. *See*, *Id.* The Court denied the remainder of Café Hillel's motion for summary judgment. *See*, *Id.*

On June 5, 2014, Defendants' moved to dismiss Plaintiffs' claims for lack of personal jurisdiction pursuant to Rule 12(b)(2), or in the alternative, for summary judgment pursuant to Rule 56. *See*, *Strauss* Dkt. Entry No. 369. On March 31, 2016, the Court denied Defendant's motion in its entirety. *Strauss v. Crédit Lyonnais, S.A.* ("*Strauss IV*"), 175 F. Supp.3d 3, 32 (E.D.N.Y. 2016).

After the Court's decision in *Strauss IV*, on December 6, 2016 Defendant moved for partial reconsideration of the Court's decision in *Strauss III*. *See*, Dkt. Entry Nos. 421-425. Specifically, Defendant moved for reconsideration of the Court's decision that: (1) Israeli military court convictions are admissible evidence, (2) Plaintiffs brought forth sufficient admissible evidence to create a genuine issue of material fact as to Hamas's responsibility for the Bus No. 19 Attack, and (3) Plaintiffs' witness Ronni Shaked's eyewitness testimony concerning the March 7, 2003 and October 22, 2003 Attacks are admissible. *See generally, Id.* The Court granted Defendant's motion only to the extent that Plaintiffs are collaterally estopped from arguing that Hamas committed the January 29, 2004 Attack. *Strauss v. Crédit Lyonnais, S.A.* ("*Strauss V*"), 2017 WL

4480755, at *5 (E.D.N.Y. Sept. 30, 2017). The Court denied the remainder of Defendant's motion for partial reconsideration. *Id.*

Pursuant to the 2013 statute of limitations amendment to the Anti-Terrorism Act ("ATA"), Plaintiffs' claims arising from five attacks (the "Reinstated Attacks"), previously dismissed by this Court as time barred, were reinstated. *See*, ECF Order dated July 16, 2013. On September 26, 2016, Defendant moved for summary judgment as to the Reinstated Attacks. *See*, *Strauss* Dkt. Entry No. 427. The Court denied Defendant's motion to the extent that: (1) Plaintiffs' expert Ronni Shaked may testify to put factual evidence already admitted into context to establish Hamas' responsibility for an attack, but not to establish the basic facts in the first instance; (2) Plaintiffs' expert Eli Alshech's testimony is admissible; (3) Israeli military court conviction records are admissible; (4) 2005 and 2007 ISA Reports are admissible; (5) there is sufficient admissible evidence for a reasonable jury to conclude that Hamas is responsible for the Reinstated Attacks; and (6) a video of Muhammad Farhat is admissible subject to a finding of authenticity and reliability at a hearing. *Strauss v. Crédit Lyonnais, S.A.* ("*Strauss VI*"), 2017 WL 4481126, at *5 (E.D.N.Y. Sept. 30, 2017). The Court granted Defendant's summary judgment motion to the extent that: (1) the testimony of Plaintiffs' fact witnesses is not admissible; (2) hearsay documents such as newspaper reports, claims of responsibility on Hamas-sponsored websites, and video wills, generally, are not admissible; and (3) Plaintiffs' § 2339C claims are dismissed. *Id.*

On March 14, 2018, the Court granted Defendant permission to file a second renewed motion for summary judgment to address the narrow issue of how the Second Circuit's decision in *Linde v. Arab Bank, Plc*, 882 F.3d 314 (2d Cir. 2018), supports its position. On May 23, 2018, Defendant filed the instant motion for summary judgment. *See*, Mot. For Summary Judgment ("Mot."), *Strauss* Dkt. Entry No. 462. Plaintiffs opposed Defendant's motion. *See*, Memorandum

in Opposition ("Opp."), *Strauss* Dkt. Entry No. 470. Defendant replied. *See*, Reply in Support of

Motion for Summary Judgment ("Reply"), *Strauss* Dkt. Entry No. 471.

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party,

but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380

(2007). "When opposing parties tell two different stories, one of which is blatantly contradicted

by the record, so that no reasonable jury could believe it, a court should not adopt that version of

the facts for purposes of ruling on a motion for summary judgment." *Id*. A genuine issue of

material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving

party, however, may not rely on "[c]onclusory allegations, conjecture, and speculation." *Kerzer

v. Kingly Manufacturing,* 156 F.3d 396, 400 (2d Cir. 1998). "When no rational jury could find in

favor of the nonmoving party because the evidence to support its case is so slight, there is no

genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential

Residential Services, Limited Partnership*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v.

Continental Group, Inc.*, 859 F. 2d 1108, 1114 (2d Cir. 1988)).

### II. Primary Liability Under the ATA

Section 2333(a) provides a civil remedy for "[a]ny national of the United States injured in

his or her person, property, or business by reason of an act of international terrorism, or his or her

estate, survivors, or heirs may sue therefor in any appropriate district court of the United States . . ." 18 U.S.C. § 2333(a). Under the ATA, "international terrorism" means activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State;

> (B) appear to be intended--

>> (i) to intimidate or coerce a civilian population;

>> (ii) to influence the policy of a government by intimidation or coercion; or

>> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

> (C) occur primarily outside the territorial jurisdiction of the United States, or transcend national boundaries in terms of the means by which they are accomplished, the persons they appear intended to intimidate or coerce, or the locale in which their perpetrators operate or seek asylum . . .

18 U.S.C. § 2331(1); *See*, *Linde*, 882 F.2d 314. Thus, the ATA has four separate requirements for an act to constitute international terrorism. The act at issue must: (1) involve violence or endanger human life; (2) violate federal or state criminal law if committed in the United States; (3) appear to be intended to intimidate or coerce civilian population, influence government policy, or affect government conduct by specified means; and (4) occur primarily outside the United States or transcend national boundaries. *See*, *Linde*, 882 F.3d at 326 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 68 (2d Cir. 2012)).

Plaintiffs bring their claims under 18 U.S.C. § 2339B as the predicate criminal violation to satisfy the second prong, which requires that the act violate federal criminal law. Section 2339B makes it a felony to "knowingly provide[] material support or resources to a [F]oreign [T]errorist [O]rganization," or attempting or conspiring to do so. 18 U.S.C. § 2339B; *See also*, *Weiss v. National Westminster Bank PLC,* 768 F.3d 202, 207 (2d Cir. 2014). Under § 2339B, "a defendant

may be liable for civil remedies under § 2333(a) for providing material support to an organization that solicits funds for an FTO," even if that support is not provided directly to the FTO itself. *Weiss,* 768 F.3d at 209.

In *Linde*, the Second Circuit rejected the argument that providing material support to a known FTO in violation of § 2339B invariably constitutes a violent act or act dangerous to human life. *Linde*, 882 F.3d at 326. ("[T]he provision of material support to a terrorist organization does not invariably equate to an act of international terrorism. Specifically, . . . providing financial services to a known terrorist organization may afford material support to the organization even if the services do not involve violence or endanger life and do not manifest the apparent intent required by § 2331(1)(B).").  The Second Circuit explained that, "conduct that violates a material support statute can also satisfy the § 2331(1) definition requirements of international terrorism *in some circumstances*." *Id.* (emphasis added).  However, the Second Circuit found that it was "incorrect [for the trial court in *Linde*] to instruct the jury that a finding that Arab Bank provided material support to Hamas in violation of § 2339(B) was alone sufficient to prove the bank's own commission of an act of international terrorism under § 2333(a)." *Id.*  Instead, the jury "needed to be instructed on and to find proved all of § 2331(1)'s definitional requirements for an act of international terrorism, including those pertaining to violence or danger and the apparent intent to intimidate or influence." *Id.*

In *Boim v. Holy Land Foundation for Relief and Development*, the Seventh Circuit rejected the plaintiffs' arguments that the defendant's financial donations to Hamas and Hamas-affiliated charities constituted an act of international terrorism as a matter of law when the defendant knew that Hamas used such money to finance the killing of Israeli Jews (some of whom were American citizens).  549 F.3d 685 (7th Cir. 2008) (*en banc*).  The Second Circuit in *Linde* explained that the

holding in *Boim* was not contrary to its holding, noting that, in *Boim*, the Seventh Circuit had not determined that the provision of material support is "always" an act of international terrorism. *Linde*, 882 F.3d at 327. Instead, in *Boim*, the Seventh Circuit analogized that "'giving money to Hamas' [is like] 'giving a loaded gun to a child,' explaining that, while neither transfer is a violent act, both are acts 'dangerous to human life.'" *Id.* (quoting *Boim*, 549 F.3d at 690). The Seventh Circuit in *Boim* focused on the foreseeability that providing Hamas funding would enable Hamas to kill more people. *Id.* However, the Second Circuit in *Linde* explained: "We need not here decide whether we would similarly conclude that a jury could find that direct monetary donations to a known terrorist organization satisfy § 2331(1)'s definitional requirements for an act of terrorism." *Id.* (citing *Licci*, 673 F.3d at 68–69). The Second Circuit in *Linde* concluded "only that providing routine financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to . . . compel a finding that as a matter of law, the services were violent or life-endangering acts that appeared intended to intimidate or coerce civilians or to influence or affect governments." *Id.* Thus, the Second Circuit determined that the provision of material support to a terrorist organization alone is not enough to constitute international terrorism.

## III.     Secondary Liability Under the ATA

Initially, the ATA did not provide a civil remedy against secondary actors who facilitated acts of international terrorism by others. *See*, *Linde*, 882 F.3d at 319-20 (citing *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013)) ("Initially, the ATA afforded civil relief only against the principals perpetrating acts of international terrorism."). On September 28, 2016, Congress amended the ATA by enacting the Justice Against Terrorism Act, Publ. L. No. 114-222 130 Stat. 852 (2016) ("JASTA"). JASTA amends § 2333 by providing a cause of action against "any person

who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed . . . an act of international terrorism." 18 U.S.C. § 2333(d)(2).

"JASTA expressly states that such secondary liability claims are not temporally limited to terrorist acts occurring after that statute's enactment." *Linde*, 882 F.3d at 320. Rather, aiding and abetting and conspiracy claims can be asserted "as of the date on which such act of international terrorism was committed, planned, or authorized." 18 U.S.C. § 2333(d). JASTA's amendment to the ATA applies to any civil action: "(1) pending on, or commenced after [the date of JASTA's enactment; and (2) arising out of an injury . . . on or after September 11, 2001." *Id.* at Statutory Note (Effective and Applicability Provisions); *See also, Linde*, 882 F.3d at 320.

In enacting JASTA, Congress instructed that the "proper legal framework for how [aiding and abetting] liability should function" under the ATA is the framework identified in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983). 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5); *See also*, *Linde*, 882 F.3d at 329. *Halberstam* set forth three elements for finding aiding and abetting liability in the civil context: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury," (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance," and (3) "the defendant must knowingly and substantially assist the principal violation." 705 F.2d at 487. As discussed in *Linde*, *Halberstam* identified six relevant factors for "determining 'how much encouragement or assistance is substantial enough' to satisfy the third element: (1) the nature of the act encouraged, (2) the amount of assistance given by defendant, (3) defendant's presence or absence at the time of the tort, (4) defendant's relation to the principal, (5) defendant's state of mind, and (6) the period of defendant's assistance.'" *Linde*, 882 F.3d at 329 (citing *Id*. at 483-84).

The Second Circuit has explained that, "[a]iding and abetting requires the secondary actor to be aware that, by assisting the principal, it is itself assuming a role in terrorist activities." *Linde*, 882 F.3d at 319 (citation omitted). For a defendant that is a financial institution, this requires a showing that "in providing [financial] services, the bank was generally aware that it was thereby playing a role in [the terrorist organization's] violent or life-endangering activities," which "requires more than the provision of material support to a designated terrorist organization." *Id*. (citation omitted).

## DISCUSSION

### I.     Defendant's Primary Liability Under the ATA

Plaintiffs assert, and this Court had concluded before the Second Circuit's decision in *Linde*, that a triable issue of material fact remains as to whether Defendant committed an act of international terrorism by facilitating the transfers of funds from Comite de Bienfaisance et de Secours aux Palestiniens (Committee for Palestinian Welfare and Relief) ("CBSP") to 13 charities (the "13 Charities"), which plaintiffs contend are alter egos of or controlled by Hamas, an FTO. *See*, *Strauss III*, 925 F. Supp.2d at 453. As discussed above, the ATA sets forth four separate requirements for an act to constitute international terrorism. The act at issue must: (1) involve violence or endanger human life; (2) violate federal or state criminal law if committed in the United States; (3) appear intended to intimidate or coerce civilian population, influence government policy, or affect government conduct by specified means; and (4) occur primarily outside the United States or transcend national boundaries. *See*, *Licci,* 673 F.3d at 68. The Court did not consider in its previous decisions whether Defendant's acts satisfy of all of these specific prongs. *See, e.g., Strauss III*, 925 F. Supp.2d 414. Defendant argues that it is entitled to summary judgment because Plaintiffs cannot satisfy all four requirements. *See generally*, Mot. Specifically,

Defendant contends that there is no triable issue of fact as to whether Defendant engaged in violent acts or acts dangerous to human life and did so with terroristic intent and, thus, Plaintiffs cannot demonstrate the first and third prongs discussed in *Linde*.

For purposes of its summary judgment motion and because the Court previously ruled in Plaintiffs' favor on the issues, *See generally, Strauss III*, Defendant assumes that a triable issue of fact remains as to whether Defendant knowingly provided material support to an FTO in violation of § 2339B. *See*, Mot. at 5, n.4. Thus, Defendant does not dispute that the second *Linde* prong presents a triable issue of fact. Additionally, Defendant does not dispute the fourth *Linde* prong, that its alleged conduct occurred primarily outside the United States or transcended national boundaries. *Id.* at 5, n.3.

### A. Violent Acts or Acts Dangerous to Human Life

Defendant contends that no reasonable juror could find that Defendant's routine banking services to CBSP involved violent acts or acts dangerous to human life. *See*, Mot. at 9. Defendant argues that undisputed evidence demonstrates that, to Defendant's knowledge, CBSP was a charity "aiming to do good works in a deeply deprived and troubled region." *Id.* at 9-10. To support this contention, Defendant points to CBSP's bylaws, which describe CBSP's charitable objectives. *Id.*; *See also,* Defendant's Supplemental Rule 56.1 Statement ("CL 56.1 Stmt."), *Strauss*, Dkt. Entry No. 464 ¶ 1; Declaration of Mark E. McDonald in Support of Mot. ("McDonald Decl."), *Strauss*, Dkt. Entry No. 463, Ex. 1. Defendant provides evidence demonstrating that, of the transfers processed by Defendant to the 13 Charities on behalf of CBSP that contained a stated purpose, the transfers were earmarked for charitable purposes. Mot. at 10; CL 56.1 Stmt. ¶¶ 6-7; McDonald Decl., Ex. 4. None of the transfers processed by Defendant were marked as being for a specific violent or terroristic purpose. *Id.* Furthermore, Defendant's employee, Robert Audren, who

worked in Defendant's Financial Security Unit and reviewed activity in CBSP's accounts, testified that he found CBSP's transfers were "perfectly coherent with the stated purpose of [CBSP] which was, in fact, welfare and solidarity with Palestine." Mot. at 11; CL 56.1 Stmt. ¶ 3. Audren understood the beneficiaries of CBSP's transfers to be "charitable Muslim associations." Mot. at 11; CL 56.1 Stmt. ¶ 4.

Plaintiffs concede that there is no evidence that any of CBSP's transfers to the 13 Charities processed by Defendant were identified as being for any specific violent of terroristic purpose. *See*, Plaintiffs' Response to Defendant's 2011 Rule 56.1 Statement ("Pls.' Resp. to 2011 56.1 Stmt."), *Strauss*, Dkt. Entry No. 308 ¶ 255 ("Plaintiffs admit they do not contend that any of the funds CBSP transferred from the accounts it maintained with Crédit Lyonnais to Hamas were used specifically to finance any of the terrorist attacks that injured Plaintiffs and/or killed their loved ones.") (internal quotation marks and citation omitted). Furthermore, Plaintiffs' experts, Dr. Matthew Levitt and Mr. Arieh Spitzen, admitted that the 13 Charities performed charitable work. *See*, Defendant's 2011 Rule 56.1 Statement ("CL 2011 56.1 Stmt."), *Strauss*, Dkt. Entry No. 304 ¶¶ 269-71.

Citing to the expert reports by Levitt and Spitzen, Plaintiffs instead argue that the evidence demonstrates that the 13 Charities were controlled by Hamas founders and that the 13 Charities "were instrumental in organizing and distributing payments to families of suicide bombers and other terrorists." *See*, Mot. at 10 (citing Plaintiffs' Supplemental Rule 56.1 Statement ("Pls.' 56.1 Stmt."), *Strauss*, Dkt. Entry No. 469 ¶¶ 2-6 and Declaration of Aaron Schlanger ("Schlanger Decl."), *Strauss*, Dkt Entry No. 467, Exs. 23, 24). Plaintiffs claim that the evidence shows that the 13 Charities "recruited Hamas operatives to commit terrorist attacks." *See*, *Id*. at 11 (citing Pls.' 56.1 Stmt. ¶ 4 and Schlanger Decl. Ex. 3). Plaintiffs further assert that the 13 Charities were

"integral to Hamas's structure and operational capacity," without providing evidentiary support for such an assertion.  *See*, *Id.* at 11.

Defendants rely on concessions made by Plaintiffs' own experts, Levitt and Spitzen, to counter the arguments made by Plaintiffs.  *See*, Reply at 6.  Specifically, Levitt does not opine that any funds transferred by CBSP through Defendant accounts were used to perpetrate the 15 attacks or that any of the 12 Charities[3] participated in, planned, trained the perpetrators of, requested that someone carry out, or was the cause of any of the 15 attacks.  *See*, *Id.* at 12-13 (citing Pls.' Resp. to 2011 56.1 Stmt. ¶¶ 260-63, 265-66).  Similarly, Spitzen does not opine that any funds transferred by CBSP through its Defendant account were used to perpetrate the 15 attacks or that any of the 13 Charities participated in, planned, trained the perpetrators of, requested that someone carry out, or was the cause of any of the 15 attacks.  *See*, Reply at 6; *See also*, Mot. at 12-13 (citing Pls.' Resp. to 2011 56.1 Stmt. ¶¶ 272-75, 277-78).  Defendant further maintains that the evidence upon which Plaintiffs rely does not relate to the wire transfers processed by Defendant.  *See*, Reply at 6.

The Court previously held that Plaintiffs' allegations survive summary judgment as to whether Defendant had the requisite scienter under the material support statute, § 2339B.  *See*, *Strauss III*, 925 F. Supp.2d at 427-31 ("[W]hen viewing the record in the light most favorable to Plaintiffs, there is a genuine issue of material fact as to whether Defendant knowingly provided material support to a terrorist organization.").  In *Weiss*, the Second Circuit explained that § 2339 "requires only a showing that [Defendant] had knowledge that, or exhibited deliberate indifference to whether, [Defendant's SDGT banking client] provided material support *to a terrorist organization*, irrespective of whether [Defendant's SDGT banking client]'s support aided *terrorist activities* of the terrorist organization."  768 F.3d at 205 (alterations in original).

---

[3] The Expert Report of Dr. Matthew Levitt refers only to twelve of the 13 Charities.  *See*, Mot. at 13, n.8.

However, § 2331(1) specifies that, to constitute an act of international terrorism supporting civil liability under § 2333, Defendant's *activities* must meet the definitional requirements of international terrorism § 2331(1). *See*, 18 U.S.C. § 2331(1). Thus, as the Second Circuit subsequently elaborated in 2018 in *Linde*, a violation of § 2339(B) "does not invariably equate to an act of international terrorism." *Linde*, 882 F.3d at 326. While, "conduct that violates a material support statute can also satisfy the § 2331(1) definitional requirements of international terrorism *in some circumstances*," *Id.* (emphasis added), a reasonable juror cannot conclude that Defendant's alleged conduct involves violence or endangers human life.

Plaintiffs assert that the issue of whether Defendant's conduct satisfies the elements of § 2331(1) and § 2333(d) always is a question for the jury. *See*, Opp. at 3. However, that assertion is not supported by the Second Circuit's ruling in *Linde*. Instead, the Second Circuit concluded in *Linde* that, in that case, the acts alleged, *i.e.*, "providing routine financial services to members and associates of terrorist organizations," were "not so akin to providing a loaded gun to a child as to . . . compel a finding that as a matter of law, the services were violent or life-endangering acts that appeared intended to coerce civilians or to influence or affect government." *Linde*, 882 F.3d at 327. *Linde* did not preclude a finding that, as a matter of law, providing routine financial services for charitable purposes to charities that include members and associates of terrorist organizations is not a violent act or act dangerous to human life under § 2331(1).

The Second Circuit remanded the *Linde* case for the jury to determine whether the § 2331(1) requirements were satisfied without finding that defendant Arab Bank did not satisfy the § 2331(1) requirements as a matter of law. *Id*. However, evidence was presented in the *Linde* case that is not present in this case. *See*, *Id.* at 321-22. For example, Arab Bank executed wire transfers for known Hamas leaders and operatives. *Id.* at 321. At least one Hamas spokesman

held an account at an Arab Bank branch. *Id.* Arab Bank employees admitted their awareness of the Hamas affiliations. *Id.* Arab Bank processed transfers on behalf of purported charities known to funnel money to Hamas. *Id.* Notably, some of the Arab Bank transfers were identified explicitly as payments for suicide bombings. *Id.* at 321-22. There is no evidence that the transfers Defendant processed on behalf of the 13 Charities were used explicitly for purposes similar to those described in *Linde*.

Without guidance from the Second Circuit as to the types of activities that would constitute violent acts or acts dangerous to human life, the Court looks to the plain language of the statute. Black's Law Dictionary offers three definitions of 'violent': (1) "[o]f, relating to, or characterized by strong physical force;" (2) "[r]esulting from extreme or intense force;" and (3) "[v]ehemently or passionately threatening." *Violent*, Black's Law Dictionary (10th ed. 2014). Black's Law Dictionary offers two definitions of 'dangerous': (1) "([o]f a condition, situation, etc.) perilous; hazardous; unsafe;" and (2) "([o]f a person, an object, etc.) likely to cause serious bodily harm." *Dangerous*, *Id.*

While the evidence Plaintiffs rely upon is sufficient to demonstrate a triable issue of fact as to whether Defendant provided material support to a foreign terrorist organization in violation of § 2339B, the evidence does not warrant a trial as to whether Defendant's activities involved violent acts or acts dangerous to human life as required under § 2331(1). Plaintiffs' reliance on the fact that the 13 Charities were controlled by Hamas founders, without more, is insufficient to prove that Defendant's activities were violent or endangered human life. Indeed, Plaintiffs offer no evidence, and their experts do not opine, that the 13 Charities participated in, planned, trained the perpetrators of, requested that someone carry out, or were the cause of the attacks giving rise to Plaintiffs' claims. Plaintiffs identify no transfers from CBSP to the 13 Charities as payments

meant to involve a violent act or an act dangerous to human life.

Plaintiffs contend that Defendant's banking services to CBSP and the 13 Charities contributed to terrorism merely because those organizations engage in terroristic activity. *See*, Opp. at 8-9. Plaintiffs' assertions address Defendant's indirect contribution, through banking services, to terrorist activities without establishing any nexus between the banking services and the terrorist activities. Plaintiffs offer no evidence that Defendant's banking services directly involved strong physical force, or intense force, or vehement or passionate threats. Plaintiffs also do not offer evidence sufficient to create a factual dispute as to whether Defendant's banking services directly involved peril or hazard or were likely to cause serious bodily harm.

Thus, Defendant's request for summary judgment as to the violent acts and acts dangerous to human life prong of § 2331(1) is granted because Plaintiffs fail to present evidence sufficient to create a jury question as to whether Defendant's activities involved violent acts or acts dangerous to human life.

### B. Terroristic Intent

The terroristic intent prong of § 2331(1) requires that Defendant's actions "appear to be intended to (i) intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping." 18 U.S.C. § 2331(1)(B). The "appear to be intended" requirement "does not depend on the actor's beliefs, but imposes on the action an objective standard to recognize the apparent intention of action." *Weiss*, 768 F.3d at 207, n.6. As with the violent act or act that is dangerous to human life prong of § 2331(1), the provision of material support to a terrorist organization in violation of § 2339B "does not invariably equate to an act of international terrorism. Specifically, . . . providing financial services to a known terrorist

organization may afford material support to the organization even if the services . . . do not manifest the apparent intent required by § 2331(1)(B)." *Linde*, 882 F.3d at 326. Here, Plaintiffs have not alleged, and the uncontroverted evidence does not show, that Defendant's apparent intent satisfies the specific intent requirement under § 2331(B).

Plaintiffs rely on evidence apparently tending to show that Defendant provided material support to a terrorist organization to argue that an issue of fact exists as to whether Defendant had the requisite terroristic intent under § 2331. Plaintiffs rely on evidence that Defendant knowingly provided financial services to a designated FTO, which satisfies the scienter requirement under § 2339. *See*, Opp. at 13-14 (discussing a New York State Department of Financial Services Consent Order with Crédit Agricole Corporate & Investment Bank New York Branch and Crédit Agricole S.A. and a Deferred Prosecution Agreement between the United States Attorney's Office for the District of Columbia and Crédit Agricole Corporate & Investment Bank).

In *Strauss III*, this Court found that a genuine issue of material fact remained "as to whether Defendant knew about or deliberately disregarded CBSP's purported support of Hamas or Hamas front groups, and that, by sending money to the 13 Charities, it was facilitating Hamas' ability to carry out terrorist attacks." 925 F. Supp.2d at 429. The evidence demonstrates that Defendant had concerns about CSBP's accounts since at least 1997, and that the concerns may have been related to CBSP's possible connection to terrorist groups. *See*, *Id.* at 429-431. Thus, this Court denied Defendant's motion for summary judgment as to whether Defendant knowingly provided material support to a terrorist organization. *Id.* at 431.

However, as clarified by the Second Circuit in *Linde*, the scienter requirement of the predicate material support statute is not the same as the definitional requirements of terroristic intent in § 2331(1). *See*, 882 F.3d at 328. In *Linde*, the Second Circuit provided an example of an

action that would constitute material support and satisfy the requirements for international terrorism as defined by § 2331(1):

> Most obviously, a person who voluntarily acts as a suicide bomber for Hamas in Israel can thereby provide material support to that terrorist organization while also committing an act of terrorism himself. The suicide bombing is unquestionably a violent act whose apparent intent is to intimidate civilians or influence government.

*Id.* at 326. In *Linde*, the evidence demonstrated that defendant Arab Bank processed bank transfers that "were explicitly identified as payments for suicide bombings." *Id.* at 321. The Second Circuit concluded that such evidence was sufficient to create a triable issue of fact as to whether Arab Bank's activities satisfied the intent requirement under § 2331(1)(B). *Id.* at 327. Here, Plaintiffs provide no such evidence. Defendant merely provided banking services to CBSP for ostensibly charitable purposes, which does not satisfy the intent required by § 2331(B) as established by the Circuit in *Linde*. While the evidence creates an issue of fact as to whether Defendant knew about or deliberately disregarded CBSP's purported support of Hamas or Hamas front groups, Plaintiffs adduce no evidence that Defendant had the apparent intent to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination, or kidnapping.

Accordingly, Defendant's summary judgment motion as to the terroristic intent prong of § 2331(1) is granted because there is no material issue of fact as to whether Defendant's activities appeared to be intended to intimidate or coerce a civilian population, influence the policy of a government by intimidation or coercion, or affect the conduct of a government by mass destruction, assassination, or kidnapping.

## II.     Plaintiffs' Aiding and Abetting Claims

Although Judge Sifton dismissed Plaintiffs' aiding and abetting claims in 2006, Plaintiffs contend that they properly have asserted an aiding and abetting claim by including a claim pursuant

to § 2333(d) in the proposed joint pretrial order.  *See*, *Strauss*, Dkt. Entry No. 458, filed on March 8, 2018, and Opp. at 15, n.16.  Defendant argues that this Court already dismissed Plaintiffs' aiding and abetting claim, and that Plaintiffs have not sought to replead any such claim.  *See*, Mot. at 21-22.  Defendant further contends that, even if the Court permits Plaintiffs to plead an aiding and abetting claim, Defendant is entitled to summary judgment on that claim.  *See*, *Id*. at 21-24.

### A.  The Joint Pretrial Order

In the proposed joint pretrial order, Plaintiffs allege that Defendant is liable under § 2333(d) for aiding and abetting a person or entity who committed an attack committed, planned, or authorized by a FTO.  *See*, *Strauss*, Dkt. Entry No. 458 at 3-6.  Specifically, Plaintiffs allege that:

> (1) Hamas was responsible for the attacks that injured the Plaintiffs; (2) Defendant provided substantial assistance to Hamas for its terrorist activities, including these attacks, by transferring significant sums of money to organizations that it knew (or consciously avoided knowing) were controlled by Hamas; and (3) Defendant's acts were a substantial factor in causing the Plaintiffs' injuries and those injuries were a reasonably foreseeable result of the significant sums of money Defendant sent to Hamas.

*Id.* at 5 (footnote omitted).  Plaintiffs concede that the Court dismissed Plaintiffs' common law aiding and abetting claim previously, but allege that, because JASTA expressly is retroactive, § 2333(d) provides a new and superseding legal basis for Plaintiffs' aiding and abetting claims, and that *Halberstam* is "the proper legal framework" for evaluating such claims.  *Id.* at 5-6 (citing *Linde,* 882 F.3d at 329).  Defendant's summary of defenses in the proposed joint pretrial order includes a statement that, "[t]he claims to be tried do not include an aiding and abetting claim because Judge Sifton dismissed the only aiding and abetting claim plaintiffs have ever pleaded in these lawsuits long ago."  *Id.* at 6, n.4 (citing *Strauss I*, 2006 WL 2862704, at *9).

Plaintiffs contend that they are entitled to proceed on the aiding and abetting claims alleged

in the proposed joint pretrial order because Rule 16(d) "provides that a pretrial order controls the course of the action, and such an action supersedes the pleadings." Opp. at 15, n.16 (quotations and citations omitted). Plaintiffs offer that, should the Court prefer that Plaintiffs assert their § 2333(d) claims by amending their complaint rather than through a pretrial order, Plaintiffs would comply. *Id.*

As a threshold matter, the Court must decide whether it will permit Plaintiffs to include an aiding and abetting claim under § 2333(d) in the pretrial order even though Plaintiffs have not included the statutory claim in the pleadings. While a pretrial order does supersede all prior pleadings and controls the subsequent course of the action, *See, Rockwell International Corp. v. United States*, 549 U.S. 457, 474 (2007), the Court normally does not expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order, particularly in a case such as this that has been pending a long time and has had substantial motion practice. *See, Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002) ("The laudable purpose of Fed. R. Civ. P. 16 is to avoid surprise, not foment it."). Instead, a party may amend its pleading to add claims with the court's leave. *See,* Fed. R. Civ. P. 15(a). Accordingly, the Court will not permit Plaintiffs to raise JASTA claims for the first time in the pretrial order.

The Court instead will consider whether it will grant Plaintiffs leave to amend their complaint pursuant to Federal Rule of Civil Procedure 15(a), even though Plaintiffs ask for this relief only in the alternative to the Court's acceptance of the claim in the pretrial order, fashions the request as a cross-motion in a footnote in the opposition, and does not attach a proposed amended complaint. *See,* Opp. at 15, n.16 ("Should the Court prefer that Plaintiffs assert their § 2333(d) claims by amended their complaints rather than through the Joint Pre-Trial Order, they will of course do so.").

Federal Rule of Civil Procedure 15(a) provides that a party shall be given leave to amend "when justice so requires." *Id.* "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *See also*, *Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a scheduling order has been entered setting a deadline for amendments, the schedule "may be modified" to allow the amendment "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

Here, a June 1, 2016 order set the deadline of June 17, 2016, for Plaintiffs to file the operative amended complaints. *See*, June 1, 2016 ECF Order. Although Plaintiffs met that deadline by filing Amended Complaints on June 17, 2016, *See*, Amended Complaint, *Strauss*, Dkt. Entry No. 408, and Amended Complaint, *Wolf*, Dkt. Entry No. 287, Plaintiffs could not have included their JASTA claims in the amended complaints because Congress enacted JASTA over three months later on September 28, 2016. "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)). The enactment of an explicitly retroactive statute after a scheduling deadline constitutes sufficient good cause.

Nonetheless, Defendant argues that Plaintiffs should not be able to raise these claims because Judge Sifton addressed them in *Strauss I*. *See*, Mot. at 21. However, Judge Sifton dismissed Plaintiffs' common law aiding and abetting claims, but did not, and could not address Plaintiffs' statutory aiding and abetting claims under JASTA as the statute did not exist at the time. *See*, *Owens v. BNP Paribas, S.A.*, 897 F. 3d 266, 278 (D.C. Cir. 2018) ("JASTA does not indicate that Congress merely "clarified" existing law when it amended § 2333. . . . If anything, JASTA's

passage confirms that Congress knows how to provide for aiding and abetting liability explicitly and that the version of § 2333 in effect [previously] did not provide for that liability."). Defendant contends that Judge Sifton relied on the same legal framework for dismissing Plaintiffs' common law aiding and abetting claims as required for dismissing JASTA claims. *See*, Reply at 8-9, 9, n.9 (citing *Strauss I*, 2006 WL 286704, at \*9). Specifically, Defendant contends that Judge Sifton evaluated Plaintiffs' aiding and abetting claim by relying on aiding and abetting precedent set forth in *In re Terrorist Attacks on Sept. 11*, which considered the *Halberstam* elements. *See*, *Id.* (citing *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp.2d 765, 798-800 (S.D.N.Y. 2005)). While Judge Sifton did reference *In re Terrorist Attacks on Sept. 11, 2001*, it is unclear from *Strauss I* whether he applied the *Halberstam* factors. *See*, *Strauss I*, 2006 WL 2862704, at \*9. The Second Circuit in *Linde* made clear that the *Halberstam* elements of civil aiding and abetting liability and factors relevant to the substantial assistance element provide the proper legal framework for evaluating a JASTA aiding and abetting claim. 882 F.3d at 329. Because it is unclear whether Judge Sifton applied that framework, the Court does not consider the decision in *Strauss I* as a bar to Plaintiffs amending their complaint. However, for the reasons that follow immediately below, amendment of the complaint is denied as futile.

### B. Summary Judgment on Plaintiffs' § 2333(d) Claims

Finally, Defendant maintains that, even if the Court were to permit Defendant to amend its complaint to include an aiding and abetting claim under JASTA, the amendment would be futile because Defendant would be entitled to summary judgment as to that claim. *See*, Opp. at 21-24. As a general matter, a Rule 12(b)(6) motion is the benchmark for determining whether amendment is futile. *See*, *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6).”); *See also, Alexander v. Westbury Union Free School District*, 829 F. Supp.2d 89, 118-19 (E.D.N.Y. 2011) (“Usually, a proposed amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss for failure to state [a] claim.”).  However, “when a motion to amend is made in response to a summary judgment motion, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact, even if the amended complaint would state a valid claim on its face.” *Alexander*, 829 F. Supp.2d at 119 (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104,110 (2d Cir. 2001)).  Here, amendment would be futile because Plaintiffs’ proposed JASTA claim fails as a matter of law.

Plaintiffs again rely on evidence that apparently tends to support a finding that Defendant had the requisite scienter required for providing material support to a terrorist organization under § 2339B to support their claim that Defendant had the requisite scienter for aiding and abetting liability under JASTA.  *See*, Opp. at 23-25.  Specifically, Plaintiffs assert that Defendant was “generally aware of its role as repository and distribution mechanism for CBSP’s continuing criminal enterprise which carried a foreseeable and enormous . . . risk of terror attacks.”  *Id.* at 23-24.  However, as discussed in detail above, Plaintiffs present no evidence that creates a triable jury question as to whether Defendant generally was aware that it played a role in any of Hamas’ or even CBSP’s violent or life-endangering activities.  Evidence that Defendant knowingly provided banking services to a terrorist organization, without more, is insufficient to satisfy JASTA’s scienter requirement.

Plaintiffs’ proposed JASTA aiding and abetting claim cannot survive summary judgment.  Accordingly, such an amendment would be futile and Plaintiffs’ motion for leave to amend the complaint is denied with prejudice.

**CONCLUSION**

For the foregoing reasons, Defendant's summary judgment motion as to Plaintiffs' remaining claims of civil liability under the ATA is granted in its entirety. Plaintiffs' motion for leave to amend the complaint to add a claim under JASTA is denied.

SO ORDERED.

Dated:  Brooklyn, New York
        March 31, 2019

                    _____/s/_____
                        DORA L. IRIZARRY
                          Chief Judge